E. WILLIAM MYERS, complainant-respondent,

*v.*

J. WISS & SONS COMPANY, a corporation, defendant-
appellant.

[Decided October 6th, 1922.]

On appeal from an order of the court of chancery advised
by Vice-Chancellor Fielder, who delivered the following opin-
ion orally:

"The question I am called upon to decide is: What was
the contract between the complainant and defendant? My
conclusion is that the contract must be gathered from the
letter of December 27th, 1919, which, if clear and explicit in
its terms, will be the only guide in determining the contract
and no extrinsic evidence would be considered to vary the
terms of that contract. If the terms of the letter of Decem-
ber 27th, 1919, are ambiguous or indefinite in any particular
as to the issue now before the court, then parol evidence and
evidence that can be gathered from the written communica-
tions passing from one party to the other, prior to the date
of the letter in question, will be considered, and that, in my
judgment, eliminates consideration of the letter of February
6th, 1920, written by Mr. Gairoard on behalf of the Wiss
company to the complainant, for it seems to me, as I have

heretofore stated, that what Mr. Gairoard said by his letter in the latter part of February, 1920, as to what he understood the contract to be, would not make the contract different from what it purports to be, and since he had the right to terminate Mr. Myers' employment with the company, if Mr. Myers did not agree with him as to the terms of the contract, and he did not exercise that option, Mr. Myers' continuing in the employ of the company would be a continuance under the terms of the contract as it really existed and as I must determine it to be. Of course, it is to be noted that there was no notice from Mr. Myers to the company that he did not accept the terms of the letter of February, 1920, until at or about the time he resigned, unless the statement he made to Mr. Brooks about the second of March, 1920, on his return from his trip south, when it appears to me from the evidence he first saw the letter of February, 1920, can be considered notice, and if I were called upon to rule .upon the question I would say that Mr. Brooks' connection with the company has been proven to be such that what Mr. Myers said to him on that occasion would be notice to the company, for Mr. Brook's connection with the sales department appears to have been such that he would be required to communicate that notice to Mr. Gairoard, his superior. But I must determine the issue, I think, by the letter of December, 1919, explained by any evidence as to its ambiguity. The question at issue now is whether the complainant, according to the terms of his employment, is entitled to receive a commission at the agreed rate on sales made by him prior to the date of his resignation, which took effect in April, 1920, where orders from his territory were accepted by the defendant, but not filled until after the date the resignation took effect. Of course, if the contract says that he was not entitled to any compensation by way of commissions on shipments made after his employment terminated, that would settle the whole matter. Of the letters offered in evidence on the point at issue, the only letter I find that bears on the subject is the letter of November 20th, 1916, which letter I will assume, from the testimony in the

case, reached Mr. Myers in the due course of business on or about its date. That letter was written three years before the contract which is now the subject-matter of dispute was entered into, and it says: 'In view of the inability of some salesmen to follow instructions and to prevent too great a congestion in our office, we have decided that after January 1st, 1917, we will credit our salesmen only with the amount of goods when shipped,' which I understand to mean: We will credit our salesmen, when shipped, with the amount of orders that we accept and they will not be entitled to such credit until the goods are shipped; that is, they will not be entitled to receive their commission on the sale price of the goods until the goods are shipped. That is the only communication I see in the case that bears on the question written prior to the date this contract was entered into. The letter of December 27th, 1919, which upon being accepted by Mr. Myers, makes the contract, starts out with this statement: 'Owing to the peculiar condition of business we find it necessary to make a change in your commissions for goods shipped to customers.' That change, from the evidence, appears to have been in the rate of commission, and not in any other other condition pertaining to the employment as it existed prior to the entering into of this contract. The letter then proceeds to provide for a flat yearly salary and traveling expenses, and then, on any excess of sales over $14,000, percentage bonus to be paid. There is no statement whatever in the letter, as I read it, as to when the payment of the bonus is to be made. I do not read the letter to say that it should be made when the orders are accepted, or when the goods are shipped; but taking into consideration the previous arrangement between the parties under which monthly settlements were made between them, it would seem to me quite clear that payment of the commission or bonus was not to be made until the goods were actually shipped out of the factory to the customer; but I do not understand that to mean that there was not a credit payable at some time to the salesman on orders accepted by defendant. Payment was merely postponed to the date when the salesman would be entitled to

receive the amount of that credit by a check or by cash. It would seem to be unfair to a salesman who had worked his territory and was subject to dismissal or could terminate his employment at any time, under the terms of his contract, to say that upon dismissal or other termination of his employment he would lose the benefit of all orders he had solicited and were accepted by his principal, merely because his employment had terminated before the orders were actually filled. The principal would have the benefit of all profits on such sales, while the salesman would lose his commission. My interpretation of the contract is that upon all orders taken by Mr. Myers and upon orders that came by mail, or that came within the terms of the contract, from the territory over which he had control, he would be entitled to receive commissions at the rate fixed by the contract, notwithstanding the fact that the orders were not filled until after the 15th of April, when his resignation went into effect.

"I understand that it will be necessary to take an account of the amount of business done within Myers' territory, and of orders filled and the goods shipped after April 15th, 1920, in order that a sum may be ascertained on which the commissions will apply and I will send the accounting to a special master."

*Messrs. Reed & Reynolds* and *Mr. Alfred F. Skinner,* for the defendant-appellant.

*Mr. W. Howard Demarest,* for the complainant-respondent.

PER CURIAM.

The order will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Fielder.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, WILLIAMS, ACKERSON, VAN BUSKIRK—12.

*For reversal*—PARKER, WHITE, GARDNER—3.