**NICE BALL BEARING COMPANY,**
Counterdefendant-Appellee,

v.

**M. H. LESCURE, Counterclaimant-Appellant.**

No. 11426.

United States Court of Appeals
Seventh Circuit.

Nov. 8, 1955.

Rehearing Denied Dec. 9, 1955.

Charles J. O'Laughlin, Thomas P. Sullivan, Chicago, Ill., for appellant. Johnston, Thompson, Raymond & Mayer, Chicago, Ill., of counsel.

Frank F. Fowle, W. McNeil Kennedy, Chicago, Ill., for appellee. Pope & Ballard, Chicago, Ill., of counsel.

Before MAJOR and SWAIM, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

This was a counterclaim to recover sales commissions allegedly due under a written contract entered into June 23, 1942 between counterclaimant, M. H. Lescure, and counterdefendant, Nice Ball Bearing Company, hereinafter referred to as Nice. The district court sitting without a jury found the issues for Nice and entered judgment in its favor. Lescure has appealed.

The essential facts are undisputed. Lescure had been the Western District Sales Manager for Nice since 1922. His duties were to call on customers within his territory and solicit their orders. He was also employed by Bearing Jobbers, Inc. and devoted about half of his time to that company for which he received compensation. The 1942 employment contract superseded an earlier contract dated June 5, 1940. It was for one year, ending June 30, 1943, and to continue thereafter from year to year unless either party sought to terminate at the end of the current year by giving 60 days written notice. On March 9, 1950 Nice gave Lescure notice that the contract would be terminated at the end of the current year—June 30, 1950. The contract provided as compensation for Lescure a commission of 3% on sales, under the circumstances hereinafter shown, with an annual maximum of $12,-000.00. In every year except one, including the year ending June 30, 1950, he made sales which would have amounted to more than $12,000.00 in commissions, but he never received more than $12,000.-00 for a year's services. He has been paid $12,000.00 for his services in the year ending June 30, 1950. By stipulation it was agreed by the parties that orders from Lescure's territory had been submitted to Nice prior to June 30, 1950 and were afterwards shipped and payment made therefor to the extent of $364,544.32. It is for these orders solicited during his employment and shipped and paid for after the termination of the contract, that Lescure sought damages for commissions due to him, together with interest.

The district court concluded: (1) that Lescure was not entitled to commissions on shipments made after June 30, 1950 because under the contract his right to commissions depended upon shipments made during the term of his employment; (2) and that Lescure having already received $12,000.00 for his services for the year ending June 30, 1950 was limited by the terms of the contract to $12,000.00 for services in that year. Lescure claims in his appeal that the district court erroneously interpreted the contract in arriving at these conclusions.

The contract provided in part:

"(c) Lescure to receive compensation based upon 3% of the sale prices on all sales of company's products, in the territory termed Chicago territory. * * * Sales mean shipments into the Chicago territory. From July 1, 1942, it is mutually agreed that the total personal compensation accruing to Lescure under this contract shall not exceed the rate of an annual maximum of $12,000.00, this being interpreted to mean that after all expenses * * * have been deducted from sums derived from 3% and 2% of sales, as provided in this clause, then the remainder of such sums so derived, which together with the monthly drawing account of $250.00, up to the annual maximum of $12,000.00,

shall be payable to Lescure, and intended as his personal compensation for his services under the contract.

"Nothing in this contract, however, shall affect Lescure's right to collect commissions payable on sales consummated by him on orders accepted by Company prior to July 1, 1942, and upon all shipments made and paid for against such orders, Lescure is to be paid at the rates of commission as provided in the contract between Lescure and Company, dated June 5, 1940, which contract will expire and be superseded by this present contract upon July 1, 1942.

"(e) Compensation due Lescure, as outlined above, shall be payable bi-annually and within thirty days after January 1st and June 30th of each year on sales effected by Lescure, against which shipments have been made during the preceding six months, and such compensation shall not be considered as earned until the particular merchandise sold has been paid for by the customer, and if a merchandise account remains unpaid for a period of ninety days from date of shipment, covering a sale made under this contract, Lescure's account is to be charged back with the amount of any compensation theretofore credited against the sale of such merchandise; provided that if thereafter such merchandise is paid for, then Lescure's account shall be recredited with such compensation.

"(f) Company agrees to credit Lescure's account with all compensation due, on any sales made during his employment by Company, upon completion of the sale by the payment for same, whether such payment be either before or after the termination of Lescure's employment."

 The provision of the contract fixing an annual maximum limitation of $12,000.00 for services is decisive. It is not necessary to determine whether the definition of sales as stated in clause (c) of the contract—"Sales means shipments into the Chicago territory," should be read into clause (f) as the district court held. The reason for this is all commissions due Lescure under clause (f) whether for sales made during his employment or shipments made during his employment would be subject to the annual maximum limitation in clause (c), wherein "it is mutually agreed that the total personal compensation accruing to Lescure under this contract shall not exceed the rate of an annual maximum of $12,000.00 * * *" "[T]he intentions [of the parties] can only be gathered from the language of the whole instrument. Massie v. Belford, 68 Ill. 290; Chicago Home for Girls v. Carr, 300 Ill. 478, 133 N.E. 344. In arriving at their intentions effect must be given to each word, clause, or term employed by the parties; none should be rejected for lack of meaning or as surplusage. Mittel v. Karl, 133 Ill. 65, 24 N.E. 553, 8 L. R.A. 655; Weger v. Robinson Nash Motor Co., 340 Ill. 81, 172 N.E. 7." Western & Southern Indemnity Co. v. Industrial Com., 366 Ill. 240, 242, 8 N.E.2d 644, 646. Lescure maintains that by virtue of clause (f) compensation due to him on orders solicited during the preceding year but shipped in the following year should be considered in the next year's computation of commissions and be payable to him whether the contract terminated or not, and that this was unaffected by the preceding annual maximum limitation. This discards from the contract the annual maximum compensation. The fallacy is that clause (f) must not be isolated from the contract as a whole. If clause (f) was inserted into the contract to give Lescure the full benefit of sales during the preceding year but consummated by shipment and payment after the termination of the employment it was applicable only if the amount of annual compensation did not exceed $12,-000.00. He has been paid the annual maximum for the year ending June 30, 1950, and that is all he is entitled to receive for his sales efforts during the preceding year. After June 30 there was no contract of annual employment on

which commissions could accrue. Lescure has cited a number of cases in his brief for his position that a salesman is entitled to commissions on merchandise ordered before but shipped after the termination of his employment. In none of these cases [1] was there an annual maximum salary limitation expressly fixed by the contract. This contract explicitly stated in clause (c) "up to the annual maximum of $12,000.00, shall be payable to Lescure, and intended as his personal compensation for his services under this contract." There could be no more definite statement of the intention of the parties. "The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties." Decatur Lumber & Mfg. Co. v. Crail, 350 Ill. 319, 183 N.E. 228, 229; J. R. Watkins Co. v. Salyers, 384 Ill. 369, 51 N.E.2d 574.

▉ Lescure contends that the contract was ambiguous and that the court should follow the construction placed upon the contract by the acts of the parties.[2] He argues that both contracts contained almost the identical provision (f), and after the second contract became effective he was paid the old contract rate of commission for shipments made after the termination of the first contract, and that this was an act of the parties construing clause (f). This is completely refuted for two reasons:

1. The last paragraph of Sec. (c) expressly provided for such payments under the old contract.

2. By the act of the parties when they included in the second contract the limitation of the maximum amount of commissions he could earn in one year, which was not in the 1940 contract.

Furthermore, Lescure never received more than $12,000.00 per year under the instant contract, although in every year except one he made sales which would have entitled him to more than $12,000.00 commissions. The acts of the parties also confirm the construction of the contract that $12,000.00 was to be the maximum amount Lescure was to receive for his yearly employment.

The judgment is

Affirmed.

---

1. See Ohio Marble Co. v. Byrd, 6 Cir., 65 F.2d 98; Atkinson v. New Britain Machine Co., 7 Cir., 154 F.2d 895; Bayer v. Oxford University Press, 270 App.Div. 586, 61 N.Y.S.2d 209, affirmed 296 N.Y. 780, 71 N.E.2d 215; Myers v. J. Wiss & Sons Co., 94 N.J.Eq. 189, 118 A. 450; Van Praag v. F. R. Corporation, Sup., 73 N.Y.S.2d 82; Gee v. Olson, 320 Mich. 274, 30 N.W.2d 867; Mott v. Good Roads Machinery Co. of New York, 227 App.

Div. 677, 102 N.Y.S.2d 781, affirmed 302 N.Y. 918, 100 N.E.2d 186.

2. "[P]ractical construction which the parties to a contract have given it by * * * subsequent acts or conduct will be followed by the court where there is doubt as to the meaning of the terms of the contract." Illinois Law and Practice —Contracts—Vol. 12, Section 232, page 405.