ROYAL INDEMNITY COMPANY,
Plaintiff,
Counter-Defendant-Appellee,

v.

KENNY CONSTRUCTION COMPANY,
et al., Defendants,
Counter-Defendants-Appellees,

and

City of Chicago, a Municipal
Corporation, Defendant,
Counter-Plaintiff-Appellant.

ROYAL INDEMNITY COMPANY,
Plaintiff,
Counter-Defendant-Appellant,

v.

KENNY CONSTRUCTION COMPANY,
et al., Defendants,
Counter-Defendants-Appellees,

and

City of Chicago, a Municipal
Corporation, Defendant,
Counter-Plaintiff-Appellee.

ROYAL INDEMNITY COMPANY,
Plaintiff,
Counter-Defendant-Appellee,

v.

KENNY CONSTRUCTION COMPANY,
a corporation, et al., Defendants,
Counter-Defendants-Appellants,

and

City of Chicago, a Municipal
Corporation, Defendant,
Counter-Plaintiff-Appellant.

Nos. 74–1738, 74–1739 and 74–1786.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1975.

Decided Dec. 15, 1975.

Rehearing Denied Jan. 15, 1976.

Henry J. Marquard, Edward V. Scoby, Chicago, Ill., for Royal Indemnity Co.

James H. O'Brien and Kevin M. O'Keefe, Chicago, Ill., for Kenny Const. Co.

William R. Quinlan, Acting Corp. Counsel, Edmund Hatfield, Asst. Corp. Counsel, Chicago, Ill., for City of Chicago.

George C. Rabens and Marvin Glassman, Chicago, Ill., for Borowsky.

Before CUMMINGS and TONE, Circuit Judges, and KUNZIG,[*] Judge.

KUNZIG, Judge:

In this indemnity action plaintiff insurer, Royal Indemnity Co. (Royal), brings a declaratory judgment action (based on diversity)[1] against its insured, a joint venture, composed of Kenny Construction Co., S. A. Healy Co., and James McHugh Construction Co. (the Venture), against the City of Chicago (the City) and against various Chicago property owners (owners). Royal seeks a judgment that it is not liable for various items of damage incurred by owners as a result of subway construction work by the City and the Venture. Royal also asks that defendants owners be enjoined from pursuing Cook County court action against it. The Venture seeks attorney's fees for its participation in this action.

The City counterclaimed against Royal contending that Royal should be held liable as indemnitor for all damages incurred by owners. The City also cross-claimed, alleging alternatively that the Venture should be held liable for all damages suffered. Finally, the City claimed a right to recover attorney's fees.

The district court found for Royal on its claim and held that the insurer was not liable to owners, the City or the Venture for any damages stemming from the subway construction. It further found that the City, if anyone, had negligently performed its construction duties and therefore denied the City's counterclaim against Royal and its cross-claim against the Venture, including the claim for attorney's fees. However, for reasons it did not explain, the court awarded the Venture $25,000 in attorney's fees against Royal.

We affirm the lower court determinations as to the responsibility of Royal, the Venture and the City in conjunction with the construction damages incurred by owners. We reverse the award of attorney's fees.

1. Facts

a. *The contracts*

On March 21, 1968, the Venture pursuant to an advertisement for bids by the City was awarded a contract to construct a portion of the proposed Kennedy Rapid Transit extension. Under the contract, the Venture was to construct approximately 2560 feet of subway under Milwaukee Avenue on the Chicago North Side (the K–4 contract). The contract contained a clause requiring the Venture to procure liability insurance for any claims arising from this contract. (K–4 contract, pp. SC–3, 4.) The contract contained another provision for coordination of additional work (p. GC–6). And, the K–4 contract contained an indemnity provision (p. GC–4).

Indemnity

Contractor shall indemnify, keep and save harmless, the City    .    .    . against all injuries, deaths, loss, damages, claims, patent claims, suits, liabilities, judgments, costs and expenses, *which may in anywise accrue against the City in consequence of the granting of this contract or which may in anywise result therefrom,* whether or

* Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. 28 U.S.C. § 2201 (1971) provides:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

not it shall be alleged or determined that the act was caused through negligence of the Contractor or his employees, of the subcontractor or his employees, if any, *or of the City of Chicago* or its employees. . . . (emphasis added).

The Venture subsequently on March 18, 1969 entered into an insurance contract with Royal under which Royal *insured* for three years claims arising from the K–4 contract. The Venture was listed as a named insured and the City as an additional insured. *The insurance contract expressly limited its coverage to work done under the K–4 contract.*

It is agreed that *coverage hereunder is limited to work being done by the named insured for the City of Chicago* under the project known as Project Ill.—UTG–2 Contract K–4, Kennedy Rapid Transit Project, Logan Blvd. and Milwaukee Ave. (emphasis added).

b. *Construction activity*

Before any construction by the Venture could begin on the subway, existing water and sewer pipes had to be relocated. The City undertook this relocation and moved the pipes to a position under the sidewalk on the east side of Milwaukee Avenue. This relocation began in April 1968 and was completed in May 1968.

The first work performed by the Venture under the K–4 contract (although it had offices in the area since March 22, 1968) was the "augering" of holes for "soldier piles" by a subcontractor for the Venture. No subway construction occurred until after the City had finished the water and sewer pipe relocation. The augering began in June 1968. The excavation for the subway was made August 13–August 18. From September 13–October 24, the concrete base was poured; and from October 31–January 20, 1969, the walls were poured. The permanent roof for the subway was installed between November 1, 1968 and January 30, 1969.

c. *Damage*

During the work on the K–4 segment, it became apparent that various buildings along Milwaukee Avenue had suffered damage as a result of construction activity. The most serious damage occurred to a structure known as the Lanski Building which had to be demolished in 1969, allegedly as a result of the subway project. Other property owners suffered lesser amounts of damage.

d. *State court lawsuits*

Seven separate lawsuits were filed in the Circuit Court of Cook County, Ill. between 1969 and 1973 against the City and the Venture.[2] In these actions, Milwaukee Avenue property owners sought to recover losses sustained as a result of the subway construction. The City and the Venture made a demand on Royal to defend these lawsuits under the provisions of the insurance agreement. Rather than defend seven separate actions in which it believed it had no liability, Royal instead brought this declaratory judgment action.

The district court found that the property damage had occurred solely as a result of negligence by the City in moving the water and sewer pipes. It determined that this activity took place *outside* the K–4 contract. Therefore, the Venture was not liable to the City under the K–4 indemnity provision and Royal was not liable because the insurance contract was limited to damages arising from K–4 contract activity. The district court held for Royal against all defendants on the property damage liability question. It denied the City's counterclaim against Royal and the cross-claim

---

2. *American National Bank v. City of Chicago,* Nos. 69 CH 1159 and 73 L 6305. *Oak Park Trust and Savings Bank v. City of Chicago,* Nos. 69 CH 1823 and 51248. *Lee Optical Co. v. City of Chicago,* No. 69 L 11321. *Continental Illinois Nat'l Bank and Trust Co. v. City of Chicago,* No. 70 L 13376. *Charles Borowsky v. Kinney Construction Co.,* No. 72 L 2493. *LaSalle Nat'l Bank v. City of Chicago,* No. 73 L 2743. *Paramount Theatre Building Corp. v. City of Chicago,* No. 73 L 2637.

against the Venture, but it granted an award of attorney's fees to the Venture against Royal.

The City appeals the decision below in which the district court found for Royal in the declaratory judgment action and also, the denial of the City's counterclaim and cross-claim. It further seeks to recover attorney's fees for work done in all phases of this litigation. Royal appeals the award of attorney's fees to the Venture. Finally, the Venture cross-appeals the attorney fee award, seeking greater amounts.

## 2. The City's Appeal

The City appeals the lower court decision asserting four bases for reversal: (1) the Venture, rather than the City caused the damage to the structures during its work on the subway; (2) the relocation work was within the K–4 contract and the indemnity provision makes the Venture and therefore Royal (through its insurance contract) liable to the City whether the City's or the Venture's negligence caused the damage; (3) the City in moving the water and sewer pipes was a *subcontractor* of the Venture, within the K–4 contract and thus entitled to indemnification; and (4) the City is entitled to attorney's fees for its pursuit of this litigation in both the state and district courts. We affirm the district court's decision in the declaratory judgment action for Royal against the City and the ruling against the City on the counterclaim and cross-claim. We also hold that the court below properly denied the City's claim for attorney's fees.

■ First, the City caused the property damage which is the basis of this lawsuit. The district court's finding that the cause of the damage to the structures along Milwaukee Avenue was sole-ly the negligence of the City in relocating the water and sewer pipes is a finding of fact. *Wallner v. Kitchens of Sara Lee, Inc.,* 419 F.2d 1028, 1033 (7th Cir. 1969); *Bolander v. Gypsum Engineering, Inc.,* 87 Ill.App.2d 325, 231 N.E.2d 659 (1967). We are convinced that this finding is fully supported by the evidence.[3] The City undertook to excavate along the sidewalk near the buildings without undertaking proper precautionary shoring measures. The record adequately illustrates that a great deal, if not all of the damage, had taken place before the Venture's construction even began. We therefore affirm the district court determination that the City's negligence caused the damage which is the subject of this lawsuit.

Second, the trial court determined that this relocation work took place *outside* the K–4 contract. Therefore, reasoned the district court, the K–4 indemnity clause did not apply to create liability by the Venture, and the insurance agreement limited to damages arising from the K–4 contract did not apply to create any liability of Royal to the City. Plaintiff contends that such a conclusion is erroneous. We agree with the lower court.

■ Resolution of whether the subway relocation was or was not part of the K–4 contract is a question of interpreting the intent of the parties from the contract as a whole. *United States v. Seckinger,* 397 U.S. 203, 213, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), *reh. denied,* 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546 (1970); *Nice Ball Bearing Co. v. M. H. Lescure,* 227 F.2d 118, 120 (7th Cir. 1955). We have carefully studied the K–4 contract and are satisfied that the City's relocation work was activity *specifically withheld* from the K–4 contract.[4] The contract map bears the legend over

3. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R.Civ.P. 52(a). The proper scope for review of the trial court's factual determination is "whether 'on the entire evidence . . . [the appellate court] is left with the definite and firm conviction that a mistake has been committed.'" *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969).

4. The drawings which were part of the K–4 contract, Exhibits four and five, item 7 under general, specifically show that the sewer work was *reserved for others.* Moreover, there is

the sewer work "To be done by others." The price of the sewer work was not included in the bids requested for the K–4 contract. No sewer plans or specifications for the relocation were contained in K–4. Therefore, the district court properly concluded as a matter of law that the sewer work was excluded from the K–4 contract itself.

However, the City contends, the broad language of the K–4 contract indemnity provision operates to shift responsibility for the City's negligence during preparatory work to the Venture and ultimately to Royal (through the insurance agreement). The indemnity language in question provides:

"Contractor shall indemnify . . . . the City . . . against all . . . loss . . . which may in anywise accrue against the City in consequence of the granting of this contract or which may in anywise result therefrom, whether or not it shall be alleged or determined that the act was caused through negligence or omission of . . . the City of Chicago or its employees. . . ."

We must discern whether or not the all-inclusive language of this section embraces damages occasioned by work performed by the City both preparatory to the work called for in the K–4 contract

*and* excluded from the K–4. We conclude that it does not so operate.

■ We again start with the proposition that given an ambiguity in the contract, we must determine the intent of the parties at the time the agreement was executed. Although both parties cite cases in which courts have given either an expansive or a narrow interpretation to indemnity agreements,[5] such is not our problem here. Royal does not argue that the indemnity provision is totally unenforceable. The City does not argue that it extends as far as the words might indicate. The problem then resolves into a process of "line drawing." Does preparatory work performed by the City fall within the language "in consequence of the granting of this contract or . . . in anywise result therefrom" or does it stand outside? We believe, from our reading of the entire K–4 contract, that it falls outside.

■ The key reason for this conclusion is that *in addition to the K–4 contract* under which the Venture assumed responsibility for building a portion of the Chicago subway, various other contracts were let. The Venture was required under the "Other Contracts" clause of K–4 to cooperate with contractors and City employees who were performing tasks *outside* of the K–4. (K–4, p. GC–6).[6]

no indication that the Venture included the cost of the City's sewer work in its bids on the K–4 contract. Significantly, the City's counsel at oral argument, in response to a question by Judge Tone, could not explain how a prospective bidder would know that the water and sewer work was part of the K–4 contract. The K–4 "bid return form" breaks the K–4 project down into 94 specific work and material categories. Thus, rather than submitting a lump sum bid, the contractor bid on the project by bidding on each of the 94 items, then adding the total of the items. Nowhere to be found in the list of the 94 items which the contractor was to have bid on, is the water and sewer work at issue here.

5. The City cites various cases in which indemnity agreements, some of equal breadth to the one in question here, were upheld and applied. For example, *Tenenbaum v. City of Chicago*, 11 Ill.App.3d 987, 297 N.E.2d 716 (1973), *rev'd on other grounds,* 60 Ill.2d 363, 325 N.E.2d 607 (1975). On the other hand, Royal urges cases upon us in which indemnity agreements were

strictly construed. *E. g., Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 395 Ill. 429, 70 N.E.2d 604 (1947). Since our determination is resolved based upon our conception of the parties' intent, we need not reach rules of indemnity contract construction. However, we note that a contract which purports to relieve the indemnitee of his own negligence will generally be strictly construed and must provide for indemnification in clear and unequivocal terms. *Auto Owners Mut. Ins. Co. v. Northern Ind. Pub. Serv. Co.,* 414 F.2d 192 (7th Cir. 1969).

6. Special condition Section 4 of the K–4 contract further delineates work which proceeded concurrently with the K–4 subway work: Duct line work, median preparation, bridge superstructures, other subway and elevated construction, construction of stations, trackwork, signals and interlocking equipment, power distribution facilities, subway electrical work, and building demolition.

To hold that the Venture (and therefore Royal) contracted to assume responsibility for negligence or omissions of any of these collateral contractors would obviously be absurd. As we see it, the City in conducting preparatory sewer work was equally a "collateral contractor" with respect to the Venture under the K–4 contract. We, therefore, conclude that the indemnity clause was never intended to extend to such collateral activity,[7] and therefore, does not operate to shift responsibility for the City's negligence to the Venture or to Royal.

■ Since the sewer work caused the damages at issue and since it was *outside* of the K–4 contract, the Royal insurance agreement (specifically limited to damages arising from the K–4 contract)[8] equally does not operate to make Royal liable for damages caused by the City during operations outside the K–4.

■ Third, since the relocation work was specifically excluded from the K–4 contract, we fail to see how the City can be termed to have been a subcontractor of the Venture under K–4 in any sense of the word. Subcontractor as used in connection with building contracts refers to "one who takes from the principal contractor a specific part of the work" undertaken by the principal contractor. 17 C.J.S. *Contracts* § 11 (1963). For the City to have been a subcontractor of the Venture, the relocation work would have had to be assumed by the Venture, then subcontracted back to the City's water and sewer department. As we have already determined, this was not the situation as the relocation was specifically ex-

cluded from the K–4. Therefore, the City cannot be considered to have been a subcontractor of the Venture, and is not thereby entitled to indemnification.

In short, the district court correctly determined that the City caused the damage to structures in the K–4 area. This damage occurred *outside* of the K–4 contract. The trial judge rightly held for Royal on its declaratory judgment suit and properly ruled against the City on its counter and cross-claims. The trial judge also properly denied the City's additional demand for attorney's fees against Royal. We affirm the lower court's judgment for Royal and the Venture against the City in all respects.

3. Royal's Appeal: Attorney's Fees

Royal cross-appeals the trial judge's award of attorney's fees in favor of the Venture against Royal. The court gave no reason for his award of attorney's fees. However, it would appear as an inference that the trial judge believed it was improper or in bad faith for Royal to have included the Venture as a defendant in this action. We disagree, and therefore reverse the lower court below.

■ Since this is a declaratory judgment action based upon diversity, Royal's liability for attorney's fees to the Venture hinges upon Illinois law governing recovery of attorney's fees.[9] The Venture contends that Illinois law provides a valid basis for award of attorney's fees in this case.

■ However, as recently noted by the United States Supreme Court, the common law rule in this country is that

---

7. Moreover, should it be necessary to resort to rules of construction to resolve any ambiguity here, we note that because the City drafted the terms of the indemnity clause and since there appeared to be no negotiation over its language, application of the rule of *contra proferentem* is called for. *United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), *reh. denied,* 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546 (1970); *Weiland Tool & Mfg. Co. v. Whitney,* 44 Ill.2d 105, 251 N.E.2d 242, 248 (1969). We reach the same result by applying a strict construction to the terms of the indemnity provision as we do by

finding the intent of the parties by evaluating other portions of the K–4 contract.

8. *See* part 1.a., *supra.*

9. In diversity actions, state law governs. *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As a general rule, in contract actions, the law of the place of contracting affords the applicable legal standard. *Irving Trust Co. v. Day,* 314 U.S. 556, 561, 62 S.Ct. 398, 86 L.Ed. 452 (1942). All parties apparently agree that this question resolves on an interpretation of Illinois law.

absent statutory authority to the contrary, attorney's fees must be borne by each litigant. *Alyeska Pipeline Service Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Illinois common law is to the same effect. *Trust Co. v. National Surety Corp.,* 177 F.2d 816, 818–19 (7th Cir. 1949).

But, the Venture contends, Section 41 of the Illinois Civil Practice Act subjects a party to attorney's fees if it sues another party without reasonable cause or in bad faith.[10] The record is silent as to any bad faith findings by the district court, and we are convinced that the Venture has not shown bad faith by Royal in this case. We are bound by the record.

 In addition, at the time that Royal brought this declaratory judgment action, it was in the position of defending seven separate state court actions on behalf of the Venture. It was possible at that time that the Venture could have been held liable to property owners for negligence *outside* the K–4 contract and that Royal, as insurer limited to K–4 damages, would not have been liable. It was not bad faith on the part of Royal to seek to bind the Venture by including it in any declaratory judgment action, but rather, sound legal practice.

Further, the declaratory judgment if it is to be effective, must afford as complete a determination as possible in multiple party litigation. Since the record is devoid as to any bad faith on the part of Royal and since it was proper for Royal to join the Venture as a party to resolve completely all issues of liability, we reverse the district court award of attorney's fees to the Venture.

In summary, we find that the trial judge correctly found that negligence of the City caused the damage to various property owners which lead to this lawsuit. The lower court properly conclud-

ed that this negligence occurred pursuant to activities outside of the K–4 construction contract between the City and the Venture. Thus, there was no basis for shifting liability from the City to the Venture under the K–4 indemnity provision and therefore no basis for shifting liability to Royal under the insurance policy which was specifically limited to damages resulting from K–4 activity. The district court properly found that the City, not Royal or the Venture, must bear total responsibility for construction property damage. Thus it correctly found in favor of Royal and the Venture against the City on the claim, cross-claim, and counterclaim. However, as it appears that Royal properly and without bad faith joined the Venture as a party, we reverse the trial judge's award of attorney's fees to the Venture.

Affirmed in part, reversed in part.

Costs to be taxed against City in No. 74–1738 and against Kenny in No. 74–1739 and No. 74–1786.

---

**10.** Section 41 of the Illinois Civil Practice Act, 110 Ill.Rev.Stat. § 41 (1968) provides:

Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial.