531 P.2d 1163

**B & M WHOLESALE CO., INC., an Idaho Corporation, Plaintiff-Respondent,**

v.

**ANCHOR RANCH, INC., an Idaho Corporation, et al., Defendants,**

and

**Anchor Ranch, Inc., an Idaho Corporation, and Milton Carothers, Defendant-Appellants.**

No. 11651.

Supreme Court of Idaho.

Feb. 7, 1975.

Richard B. Eismann, Homedale, for defendants-appellants.

Peter J. Boyd of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiff-respondent.

BAKES, Justice.

This appeal presents the question of whether a repossessing conditional vendor must sell the collateral as a condition to obtaining a deficiency judgment.

On October 6, 1966, plaintiff-respondent B & M Wholesale Co., Inc., entered into an agreement with defendant-appellant Anchor Ranch, Inc., in which defendant-appellant Milton Carothers, an officer of Anchor Ranch, also became personally obligated. The agreement, which was entitled a lease, but which was found by the trial court to be a conditional sales contract (that finding is not challenged on appeal), called for B & M to provide certain irrigation equipment to Anchor Ranch, and for

Anchor Ranch to make five annual payments of $4,800.77 to B & M, beginning in October, 1966. Anchor Ranch made the initial payment but failed to make the payment due in October, 1967, until April 16, 1968. Thereafter it made additional payments of $4,628.65 on April 10, 1969; $500.00 on January 21, 1969; $2,500.00 on May 7, 1970; and $3,000.00 on July 6, 1971. Because of Anchor Ranch's failure to make payments as they became due under the contract, B & M exercised its rights under the contract[1] by entering upon Anchor Ranch's property in March, 1971, and repossessing the equipment. Anchor Ranch was notified by letter that B & M intended to sell the equipment for Anchor Ranch's account, but the record is clear that there never was a sale of the equipment by B & M; rather, it appears from the testimony at trial that the equipment was put to use on the farm of the principal owner of B & M. Later that farm was sold and the equipment was included as part of the sale without any consideration separately given for it.

On June 4, 1971, B & M initiated this action asking for a deficiency judgment, including interest on late payments at the rate of 1% per month as provided for in the agreement, reasonable attorney fees and the costs of the suit. The trial court found that Anchor Ranch had failed to make payments called for in the agreement totaling $5,027.77, including interest charges on late payments at a rate of 1% per month, and concluded that B & M was entitled to this amount reduced by (1) $3,500.00, the market value of the equipment repossessed by B & M, and (2) an offset of $600.00 owed by B & M to Anchor Ranch under an unrelated counterclaim. It thus entered judgment against Anchor Ranch and Milton Carothers for $927.70.

Defendants Anchor Ranch and Carothers have appealed to this Court, assigning two errors: (1) that the 1% per month interest charge for delinquent payments was usurious, and (2) that it was erroneous to award a deficiency judgment when the repossessing party neither leased nor sold the repossessed goods. We agree with the second assignment of error that, absent a sale, B & M has no right to a deficiency judgment. Thus, we do not reach the first assignment of error and express no opinion on it.

■ Regarding B & M's right to a deficiency judgment, the first question we

---

1. The following clause of the agreement sets forth options of B & M (lessor) in the event of default by Anchor Ranch (lessee):

"10. If default shall be made by Lessee in any of the covenants herein contained, or Lessee shall fail to perform at the time and in the manner herein provided, any term or covenant hereof, . . . then, . . . Lessor, without any liability on its part, may exercise any one or more, or any combination thereof, of the following rights:

"A. Lessor may terminate this lease without notice or demand and take immediate possession of the leased equipment, together with all accessories thereto and any property of Lessee which may be in or attached to said leased equipment; and the Lessor shall be entitled to enter upon any premises where said leased equipment may be stored or located and remove the same without liability for trespass or any responsibility for any property of Lessee attached to or stored with said leased equipment.

"B. The Lessor may immediately declare the total balance of the rental to be paid to be immediately due and payable without notice, and commence an action to collect the same.

"C. The Lessor may retake possession of the leased equipment without notice and rent the same for the account of Lessee for such rent and upon such terms as Lessor may see fit, and apply the net proceeds to any amounts due to Lessor or which may become due by reason of the terms of this lease, and if a sufficient sum shall not be thus realized, the Lessee agrees to pay and satisfy any deficiency.

"D. The Lessor may declare the balance of the rental to be due and may sell the equipment leased hereunder, and Lessee agrees to pay the difference between the amount realized by Lessor in the sale of any such equipment, plus expenses and reasonable attorney's fees incurred in such sale and the balance of the rental due.

"E. The Lessor may pursue any other remedy provided by law in equity." (Clerk's Tr., p. 4).

must determine is whether the Uniform Commercial Code, I.C. Title 28, chapters 1–10, governs this appeal. I.C. § 28–10–102(2) provides as follows:

"Transactions validly entered into before the effective date specified in section 28–10–101 [midnight of December 31, 1967] and the rights, duties and interests flowing therefrom remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred."

This contract was entered into in 1966, so even though the property was repossessed after the effective date of the UCC, the law in effect before adoption of the UCC will govern our disposition of this case. Thompson v. Dalton, 95 Idaho 785, 520 P. 2d 240 (1974).

■  When this contract was made, the Uniform Sales Act (USA), I.C. Title 64, chapters 1–6, was in effect.[2]  While the USA defined sales to include both absolute and conditional sales, I.C. § 64–101 (USA § 1), and thus included conditional sales contracts as contracts of sale subject to its terms, it did not explicitly provide rules for determining a conditional seller's damages following repossession of goods from a defaulting buyer. I.C. §§ 64–402 and 64–409 (USA §§ 53 and 60), then in effect, established the right of a seller who was unpaid and had reserved the right of resale in the contract with the buyer to resell the goods to establish damages for default in payments. *See* Cranston v. Western Idaho

Lumber & Bldg. Co., 41 Idaho 141, 238 P. 528 (1925).  But these sections, and the other sections of the USA cataloguing the seller's remedies, neither placed a duty upon the seller to resell the goods repossessed to establish damages nor did they seem to contemplate a situation where a seller would repossess the goods, retain them, and still seek a deficiency.  In summary, the Uniform Sales Act did not specifically cover this case and we must look to general principles of the law relating to commercial transactions to guide us.[3]

■  The law regarding conditional sales appears to have undergone a slow and convoluted evolution culminating in articles II and IX of the UCC.  *See* I Gilmore, Security Interests in Personal Property, ch. 3, pp. 62–85 (1965).  According to the commentary in the Uniform Laws Annotated, the common law early in this century usually gave the seller under a conditional sales contract only one of two options after a buyer defaulted: (1) he could sue for the unpaid price, or (2) he could repossess the goods covered by the contract.  It appeared initially that a majority of states did not then allow the seller to repossess, sell the goods and obtain a deficiency judgment.  As a result, twelve states (excluding Idaho) subsequently changed this rule by adopting the Uniform Conditional Sales Act (UCSA), which allowed a repossessing seller to resell the goods repossessed, then seek a deficiency for the amount unpaid less the proceeds of resale. Under the Uniform Conditional Sales Act, the right to a deficiency judgment was conditioned upon resale of the goods repos-

2.  It was repealed effective at midnight, December 31, 1967, the effective date of the UCC.  Chapter 161, 1967 Session Laws.

3.  The inapplicability of the UCC to this transaction does not preclude us from considering the principles espoused therein in determining the rule which we adopt for Idaho. Under the UCC the remedies available to a secured party in the event of default are contained in § 28–9–501 et seq. I.C. § 28–9–504 (1) gives the secured party the right to sell, lease or otherwise dispose of the secured prop-

erty in a commercially reasonable manner, and I.C. § 28–9–505(2) provides that if the repossessing secured party does not sell the goods, then he may "propose to retain the collateral in satisfaction of the obligation." Under the UCC a secured party must dispose of the collateral in order to be entitled to a deficiency judgment against the debtor.  4 Anderson, Uniform Commercial Code, § 9–504:28, pp. 622–623 (1971); II Gilmore, Security Interests in Personal Property, § 44.3, pp. 1220–1227 (1965).

sessed. UCSA § 19–24. However some states, even in the absence of enacting the Uniform Conditional Sales Act, began to allow a repossessing seller to resell the goods repossessed and then seek a deficiency judgment for the amount unpaid less the proceeds of resale. Vol. 2A, ULA, §§ 123–127, pp. 169–180 (1924). In Cranston v. Western Idaho Lumber & Bldg. Co., 41 Idaho 141, 238 P. 528 (1925), where goods subject to a conditional sales contract were repossessed and then sold in an auction which was not conducted according to the requirements of the Uniform Sales Act, the Court stated, at page 144, 238 P. at page 529:

> "The title retaining notes do not reserve on behalf of the holder, a right to purchase in case the vendee defaults and the property is repossessed and resold. The holder can maintain an action for a deficiency after the sale only in the event that such unpaid balance is ascertained by a lawful sale of the property."

Thus, the law evolved allowing a repossessing seller to pursue a more flexible remedy, combining both his right of repossession and suit for the unpaid purchase price, but it denied the seller a combination of these remedies which would place him in a better position than he would have been had the contract been fully performed.

Applying the foregoing general propositions of commercial law, we hold that even in cases not controlled by the UCC, where property that is the subject of a defaulted conditional sales contract is repossessed by the seller, that in order to establish a right to a deficiency judgment, the seller must first attempt to mitigate his economic loss by a sale or lease of the property. Cf. Industrial Leasing v. Thomason, 96 Idaho 574, 532 P.2d 916 (1974). B & M, having failed to sell or re-lease the property in question, was not entitled to a deficiency judgment.

B & M suggests that under Section 10 of its written agreement with Anchor Ranch (see footnote 1) it should be permit-

ted to combine its remedies and both repossess the property and sue for the entire unpaid balance. Such an interpretation of Section 10 of the agreement would not only be a strained interpretation of that document, but would be against the public policy which we have announced. In many instances, to permit the secured party to retain the collateral and at the same time sue for the entire balance due under the agreement without selling or re-leasing the security and setting the proceeds off against the indebtedness could result in an unconscionable forfeiture to the buyer and an unjust enrichment to the seller. Cf. Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954); Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964). The rule we announce today will prevent such a result.

Judgment of the trial court awarding a deficiency judgment is reversed. Costs to appellant.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, D. J., (retired), concur.