598 P.2d 538

The EIMCO CORPORATION, a division of Envirotech Corporation, Plaintiff, Respondent and Cross-Appellant,

v.

Sandy SIMS, Executor of the Estate of James Howard Sims, Deceased, and Estate of James Howard Sims, Defendants, Appellants and Cross-Respondents.

No. 12768.

Supreme Court of Idaho.

Aug. 3, 1979.

Barry Marcus, of Marcus & Marcus, Boise, for appellant.

H. N. Jewell, Twin Falls, for respondent.

DONALDSON, Chief Justice.

The estate of James Howard Sims (Sims), defendant-appellant, brings this appeal from an adverse jury verdict in an action originally filed by plaintiff-respondent, the Eimco Corporation (Eimco), against Sims for rent allegedly due under a "rental lease and agreement" signed by J. Howard Sims, deceased.

Sims, of Salmon, Idaho, and Eimco, a Utah based corporation, entered a "rental lease and agreement" on or about June 29, 1970 for the rental of a model 911 Load-Haul-Dump (LHD) machine for use in mining. The agreement provided for an advance payment of one month's rent, monthly rent in the sum of $2,034.24 including 3% Nevada sales or use tax and a guaranteed minimum monthly rental period of three months. The agreement also provided that the lessor could re-lease the equipment upon five days notice after the minimum guaranteed rental period had expired. As part of the agreement, but in a separate letter dated June 29, 1970, Eimco granted Sims an option to purchase the machine for $21,500. The option provided that upon its exercise "by written notice at anytime dur-

ing the continuance of the rental agreement," Eimco would apply 90% of the rental payments made during the twelve months preceding Sims' exercise of the option to the purchase price.

The agreement provided for delivery of the LHD via commercial carrier to the Rawhide Mine in which Sims apparently had a business interest, near Bernice Canyon, Nevada. Subsequent to that delivery on July 16, 1970, Sims made only one rent payment on the machine, bringing the total amount which he paid pursuant to the agreement to $4,068.50.

By letter, dated November 16, 1970, Sims notified Eimco that he "turned the mucker contract over to the boys in Nevada, Rawhide M & D Co." The record is unclear as to who "the boys" are, but Sandy Sims, executor of his father's estate, testified that he thought they were partners with his father in the Rawhide Mining venture. On November 20, 1970, Eimco notified Sims by letter that he was "seriously past due" on two monthly payments for the LHD. The letter informed Sims that since Eimco had received no payments or communications from the Rawhide M & D Co. and since the rental agreement was in Sims' name, Eimco would look to him for payment. Eimco wrote another letter to Sims on December 7, 1970 informing him that he was then in arrears on three months rent and that a collection action was imminent. Sims never responded to either of Eimco's letters.

Sims died in a plane crash on January 10, 1971. Eimco retook possession of the machine on February 27, 1971,[1] and filed this action for rent due under the agreement on August 30, 1971 praying for judgment in the principal sum of $10,948.26, statutory interest, attorney fees and costs. After a trial on the merits in March of 1976, the jury returned a verdict for Eimco in the amount of $4,506.48. The district judge in signing the judgment in the amount of the jury verdict struck the provisions for Eim-

---

1. After retaking possession, Eimco leased the machine to the W. L. Hailey Company for a monthly rental rate of $1,744.50 and an option to purchase for $17,594.50. Nine months later, Eimco repossessed the LHD from the W. L. Hailey Company and on March 12, 1972, sold it to New Jersey Zinc for $13,850.

co's costs, attorney fees and statutory interest.[2] The district judge, in an order dated May 27, 1977, also denied each party's subsequent motion for judgment notwithstanding the verdict on the sole ground that they were untimely filed under I.R.C.P. 58(a). Sims then brought this appeal. Eimco cross appeals the district court's striking of its prejudgment interest, costs and attorney fees and the court's disallowance of Eimco's memorandum of costs without a hearing.

The first question which we address is whether the trial court erred in denying Sims' motion for judgment n. o. v. on the ground that it was untimely filed. The relevant facts which gave rise to this question are as follows.

The jury rendered its verdict in this case on March 17, 1976. The formal judgment was filed on April 19, 1976, which was the same day that the appellant filed his motion for judgment n. o. v. Eimco filed its motion for judgment n. o. v. on April 20, 1976. Judge Burton heard these motions almost a year later on April 25, 1977. He issued his decision with respect to both motions on May 27, 1977 (filed June 3, 1977) in a document entitled "Motions Denied." In that order the court ruled only that neither party had complied with the ten day requirement of I.R.C.P. 50(b) because the ten days began to run against the filing of the motions on the date that the verdict was rendered (March 17, 1976), rather than the date when the formal judgment was entered (April 19, 1976).[3]

I.R.C.P. 50(b), motion for judgment notwithstanding the verdict, is specifically worded in terms of "entry of judgment" where the jury has returned a verdict:

"Any party aggrieved by a verdict, whether or not he has previously moved for a directed verdict, may move within ten (10) days after the entry of judgment to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned, such party, within ten (10) days after the jury has been discharged, may move for judgment . . . ."

Thus, I.R.C.P. 50(b) by its own language distinguishes between the running of the ten day period in the situation where, as in this case, the jury has returned a verdict as opposed to the situation where the jury had not returned a verdict. In the former, the ten day rule runs from the day of entry of the judgment. I.R.C.P. 58(a), Entry of Judgment, provides:

"Unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury shall be entered forthwith by the clerk. . . . The deposit of a judgment as provided in Rule 79(b) constitutes the entry of the judgment; and *the judgment is not effective before such entry* . . . ." (emphasis ours)

I.R.C.P. 79(b) requires the clerk of the district court to maintain a "Judgment Book" in which is kept correct copies of final judgments.

■ The judgment entered in this case contains the clerk's filing information showing that it was copied into Book G of Judgments, page 25, on April 19, 1976. Clearly then the judgment in this case was properly entered pursuant to Rule 58(a) on April 19, 1976, and therefore that judgment could not be effective prior to that date. Appellant Sims filed his motion for judgment n. o. v. on the same day that the judgment was entered. Sims' filing of that motion was within the ten day rule and was, as a consequence, timely. The trial court erred in denying his motion solely on the ground of untimeliness.

---

2. The judgment is dated March 12, 1976. But as Eimco points out this appears to be a clerical error, the correct date probably being April 12, 1976. The judgment was filed in the Lemhi County District Court Clerk's Office on April 19, 1976.

3. There was some confusion after the trial judge's denial of these motions as to whether the document entitled "Motions Denied" was in fact an order. In a letter dated August 29, 1977, the judge informed the clerk that the document denying the motions was intended to be an order denying the motions because they were not timely presented.

This finding of error does not conclude our review however, for under I.R.C.P. 50(c)(1), "[a]n appeal from a judgment granting or denying a motion for judgment notwithstanding the verdict presents for review all reviewable error against either the appellant or appellee." We turn then to appellant Sims' principal contention on appeal: that as a matter of law the "rental lease and agreement" upon which Eimco brought this suit for rent due is a security agreement under I.C. § 28–1–201(37). Sims argues that this was a question of law for the trial court, not a factual issue for the jury.

Sims points out that if this agreement constituted a security agreement under Chapter 9, Title 28 of the Idaho Code (Art. 9 of the Uniform Commercial Code), then Eimco's suit for rent due is in fact a suit for deficiency. That being the case Sims contends that by virtue of Eimco's subsequent lease of the LHD to W. L. Hailey Company and finally Eimco's sale of the machine in March 1972, there was no deficiency which Eimco could recover from Sims. I.C. § 28–9–504(2); *B & M Wholesale Co., Inc. v. Anchor Ranch, Inc.*, 96 Idaho 518, 531 P.2d 1163 (1975).

Idaho Code § 28–1–201(37) defines "security interest" to mean:

"an interest in personal property or fixtures which secures payment or performance of an obligation . . . .

"Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest'. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Given the above language, it is necessary to determine whether by the terms of their purchase option, Eimco and Sims intended their agreement as security. Of course, an option to purchase does not by itself make a lease a security agreement, but an agreement which provides that upon compliance with the terms of the lease, the lessee has the option to become the owner of the property for nominal consideration, makes the lease an agreement intended for security regardless of the intent of the parties. *See Whitworth v. Krueger*, 98 Idaho 65, 558 P.2d 1026 (1976).

It is undisputed here that Eimco granted Sims an option to purchase the LHD. However, there is a question as to whether Sims would have had to pay "no additional consideration" or "nominal consideration" upon exercising that option within the meaning of I.C. § 28–1–201(37). The agreement between the parties provided for a guaranteed minimum rental lease period of three months. The option provided that upon its exercise Eimco would apply 90% of any of the rental payments made during the twelve months preceding Sims' exercise of the option to the purchase price of the LHD. The option did not specifically state at what point in time Sims could exercise it. Thus, it appears that Sims could have exercised the option, had he not been in default, as early as three months from the date that he and Eimco entered into the agreement. At three months, after receiving credit for 90% of three months rent against the $21,500 cash purchase price, Sims would have had to have paid $16,167.50 to exercise the option. This is clearly not nominal consideration within the meaning of I.C. § 28–1–201(37)(b). *See McGalliard v. Liberty Leasing Co. of Alaska, Inc.*, 534 P.2d 528 (Alaska 1975). Alternatively, if Sims had exercised the option after twelve months of performance under the agreement, he would have received credit for 90% of twelve months rent (90% × 23,700 = $21,330) against the purchase price of $21,500. At the end of twelve months then, Sims could have exercised his option for the nominal sum of $170 or .79% of the total price of the LHD. To further complicate the situation the agreement provided that the lessor could recall

the equipment upon five days notice after the minimum period had expired. This Eimco did not do until February 27, 1971, some six to seven months after the equipment was delivered.

Because Sims could have exercised this option at two points in time, at one point for the significant sum of $16,167.50 and at a later point for the nominal sum of $170, I.C. § 28–1–201(37)(b) does not necessarily compel the conclusion that the parties intended to create a security interest. We therefore review the facts surrounding this transaction, as well as the language contained in the agreement.

■ In the first instance the language in the rental contract did not recognize an equity or beneficial interest in Sims as the lessee. *See In re Tillery*, 571 F.2d 1361 (5th Cir. 1978). It is well settled that an equity in the lessee is one of the distinctive characteristics of a lease intended for security. *In re Royers' Bakery, Inc.*, 1 U.C.C.Rep. 342 (E.D.Pa.1963). Secondly, Sims' subsequent actions and performance under the rental agreement indicate that at no time prior to his default did he consider his rental payments to be accumulating any equity in the LHD. *See In re Alpha Creamery Co., Inc.*, 4 U.C.C.Rep. 794 (W.D.Mich.1967). Prior to his default Sims made only an advance payment of one month's rent and, subsequent to taking delivery of the machine, one rental payment. Sims' total payment then on a machine valued at $21,500 in the written option to purchase was $4,068.50 at the time he defaulted. Be that as it may, Sims never took any affirmative steps to rectify the default. Instead he informed Eimco that he had "turned the mucker contract over" to the Rawhide M & D Co. in Nevada despite an express prohibition in the contract against subletting the machine without Eimco's permission. Eimco never received any further payments from either Sims or Rawhide M & D Co.

4. Ordinarily the interpretation of a contract is a question of law but where there are conflicting terms in the contract which create an ambiguity, its interpretation and meaning is a question of fact to be determined by the jury. *Werry v.*

■ In our view the record contains sufficient evidence from which the jury could conclude that the parties to this transaction intended to create a lease rather than a security interest.[4] It is upon this ground that the trial court should have denied Sims' motion for judgment n. o. v. Where an order of the lower court is correct but entered on a different theory, it will be affirmed on the correct theory. *Robison v. Compton*, 97 Idaho 615, 549 P.2d 274 (1976). We therefore affirm the trial court's denial of Sims' motion for judgment n. o. v.

Eimco calls our attention to the fact that the trial judge, for reasons not apparent from the record, struck the provisions in the judgment relating to statutory interest which had accrued since November, 1970, on the $4,506.48 awarded by the jury, the provision for attorney fees which fees the parties had expressly agreed to in the rental contract and Eimco's costs as set out in their memorandum of costs and disbursements. Eimco raised these issues below by timely filing a motion for judgment n. o. v. and then an amended motion for judgment n. o. v. Eimco's first motion sought statutory interest on the jury verdict of $4,506.48 from August 29, 1970 to the date of judgment in the total amount of $1,712.45. Eimco's amended motion first sought judgment against Sims in the principal sum of $10,510.28 and, alternatively, asked for $1,712.45 in statutory interest on the $4,506.48 jury verdict and attorney fees. As with Sims' motion for judgment n. o. v., the trial court denied Eimco's amended motion solely on the ground that it was not timely filed. The record clearly demonstrates that Eimco's motion was timely.

■ Under I.C. § 28–22–104(1) Eimco is entitled to statutory interest on the judgment of $4,506.48. Eimco's counsel specifically provided for such interest in the judg-

*Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *National Produce Distributors v. Miles & Meyer, Inc.*, 75 Idaho 460, 274 P.2d 831 (1954).

ment[5] and it should be added to the judgment. The amount of such interest is $1,712.45. With respect to attorney fees, we note that the lease agreement specifically provided for the same in the amount of 10% of the recovery in the event that Eimco instituted legal proceedings to recover sums due under the agreement. The judgment must also be amended to provide attorney fees in the amount of $450.

■ As to costs, the record shows Eimco timely filed a memorandum of costs and disbursements seeking a total of $220.45 in costs pursuant to I.R.C.P. 54(d)(5). Pursuant to I.R.C.P. 54(d)(6), Sims filed a motion to strike Eimco's costs. The trial court did in fact strike those costs from the judgment, and as we noted above, Eimco moved to alter or amend the judgment as it related to statutory interest, attorney fees and costs. Eimco argues that under I.R.C.P. 54(d)(1)(A) it, as the prevailing party, was entitled to costs as a matter of right. We agree, unless for good cause shown the judge should deny the same. The record does not show that this was done in this case. I.R.C.P. 54(d)(1)(C).

Based on the foregoing, we affirm the trial court's denial of Sims' motion for judgment n. o. v.; we direct the amendment of the judgment to provide statutory interest, attorney fees and costs.

Costs to respondent.

SHEPARD, BAKES, McFADDEN and BISTLINE, JJ., concur.

5. For reasons which are unclear to us Eimco asked for $1,892.72 in statutory interest in the judgment rather than $1,712.45 as in its motions for judgment n. o. v.