**In re BUMGARDNER, Earl M. and Bumgardner, Helen E., Debtors.**

**Bankruptcy No. 95–00345.**

United States Bankruptcy Court,
D. Idaho.

May 8, 1995.

---

Louis Garbrecht, Coeur d'Alene, ID, for debtors.

Richard J. Hayden, Coeur d'Alene, ID, for Ford Motor Credit Co.

L.C. Spurgeon, Trustee.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Pursuant to 11 U.S.C. § 365, Ford Motor Credit Company ("FMCC") moves to require debtors, Earl M. Bumgardner and Helen E. Bumgardner, to assume or reject an unexpired lease. The debtors contend the agreement is a sale and security transaction, not a lease.

### THE AGREEMENT

The debtors and Wendle Ford/Nissan/Isuzu Sales, Inc. ("Wendle Ford") entered into the agreement in issue for the purchase/lease of a new 1992 Ford Conversion Van (the "Van"). Pursuant to the agreement, Wendle Ford assigned its interest as "lessor" to Ford Motor Credit Company ("FMCC").

The debtors paid $9,547.72 at the inception of the agreement consisting of: $7,989.07 capitalized cost reduction, $575.00 security deposit, $566.20 advance monthly payment, and $399.45 taxes. The agreement has a term of four years and calls for forty-eight (48) monthly payments of $566.20.

The debtors are required to maintain insurance on the vehicle and are responsible for any loss or damage to the Van. *See* Agreement ¶¶ 20, 21, 26 and "Vehicle Insurance." The debtors are also responsible for all use, sales and other taxes assessed on the Van. FMCC has a limited right to accelerate payments in the event of default.

The debtors have the option to purchase the Van at the end of the lease term for $10,397.31. The agreement defines the "lease residual value" as $9,897.72. The agreement does not give the debtors the option to purchase in the event of default or early termination.

### DISCUSSION

The determination of whether a transaction is a true lease or a disguised security interest is determined by state law. *Arnold Machinery Co. v. Trustee Services Corp. (In re Hodge Lumber & Wholesale, Inc.)*, 86 I.B.C.R. 28, 28–29 (Bankr.D.Idaho 1986).

*In re Zaleha,* 159 B.R. 581, 582 (Bankr.D.Idaho 1993).

■ The debtors contend Washington law applies. Paragraph 29 of the agreement provides:

> General: Except as otherwise provided by the law of the state where the Lessee resides, the law that will apply to this Lease is the law of the state where the Lessor's place of business is, as set forth on the front of the Lease....

The initial lessor is doing business in Spokane Washington, where the agreement was entered into. The debtors reside in Idaho. Therefore, unless Idaho law provides otherwise, Washington law will apply.

■ Idaho Code § 28–1–105 provides in relevant part:

> (1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this state.
>
> (2) Where one of the following provisions of this act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:
>
> ....
>
> Applicability of the chapter on Leases. Sections 28–12–105 and 28–12–106.
>
> ....
>
> Policy and scope of the chapter on Secured Transactions. Sections 28–9–102 and 28–9–103.

Idaho Code § 28–1–105.

Both sections 28–9–103 and 28–12–106 require Idaho Law be applied to the agreement.

Idaho Code section 28–9–103 provides in relevant part:

> Certificate of Title. (a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of

which indication of a security interest on the certificate is required as a condition of perfection.

> (b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate....

Idaho Code §§ 28–9–103(1)(a) and (b).

The certificate of title to the Van is issued by the State of Idaho. Therefore, if the agreement is a security agreement the law of the state of Idaho applies to the issue of perfection of FMCC's interest in the Van.

Conversely, if the agreement is a true lease, Idaho Code Section 28–12–106 provides in relevant part:

> If the law chosen by the parties to a consumer lease is that of a jurisdiction other than a jurisdiction in which the lessee resides at the time the lease agreement becomes enforceable or within thirty (30) days thereafter or in which the goods are to be used, the choice is not enforceable.

Idaho Code § 28–12–106(1).

If agreement is a lease, it is a consumer lease. *See* Idaho Code § 28–12–103(1)(e). According to the agreement, the debtors resided in Idaho at the time the agreement became enforceable. Accordingly, the choice of law provision in the agreement is not enforceable.

However, as Idaho law and Washington law are substantially similar with regard to whether a lease is a disguised security transaction, the outcome of this proceeding would be the same under the law of either state.

Both Idaho and Washington have adopted the Uniform Commercial Code § 1–201(37). In construing the Idaho version of U.C.C. § 1–201(37), the courts have applied the following seven factors to determine whether an agreement is a disguised lease:

1. Whether the option price is nominal;
2. Whether the lessee obtains equity in the property leased;
3. Whether the lessee bears the risk of loss;

4. Whether the lessee pays the tax, licensing and registration fee;

5. Whether the lessor may accelerate payment;

6. Whether the property is purchased specifically for lease to the lessee; and

7. Whether the lease contains a disclaimer of warranties.

*In re Zaleha,* 159 B.R. at 582, *citing In re Maritt,* 155 B.R. 12, 13 (Bankr.D.Idaho 1993).[1] However, since the *Maritt* case was decided, U.C.C. § 1–201(37) has been amended and Idaho has adopted the amendment. *See* Idaho Code § 28–1–201(37)(1993). Accordingly, in *Zaleha,* this court abandoned the seven factors in favor of the more detailed analysis provided by the newly amended section 201(37). *Id.* The amended version of Idaho Code § 28–1–201(37)[2] provides in relevant part:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods; or

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods; or

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that:

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into; or

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods; or

(c) the lessee has an option to renew the lease or to become the owner of the goods; or

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

"Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and

---

1. This test is substantially the same as the one adopted by the Washington State courts. *See Rainier National Bank v. Inland Machinery Company,* 29 Wash.App. 725, 631 P.2d 389 (1981).

2. The amended Idaho statute is substantially the same as Wash.St. 62A.1–201. (effective July 1, 1994)

circumstances at the time the transaction is entered into.

"Present value" means the amount as of a date certain of one (1) or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

Idaho Code § 28–1–201(37) (effective July 1, 1993).[3]

As yet there is no recorded Idaho state or Washington state decision construing the amended statute. However, in *In re Zaleha,* this Court applied the statute in the manner directed by *In re Lerch,* 147 B.R. 455 (Bankr. C.D.Ill.1992). In *Lerch* the court applied Illinois's version of the amended U.C.C. section:

> The initial portion of the first sentence of the second unnumbered paragraph contains the basic direction that the determination is made based on the facts of each case. The latter portion of the first sentence of the second unnumbered paragraph starting with the word "however" creates an exception to the basic direction that the determination is made on the facts of each case, as it provides that without looking at all the facts, a lease will be construed as a security interest if a debtor cannot terminate the lease, and if one of the four enumerated terms is present in the lease.

> Absent a mandated classification, the determination is based on the facts of the case. At this point the third unnumbered paragraph comes into effect. Focusing on the economics of the transaction, it states that a security interest is not created merely because it contains any of the five terms enumerated in the third unnumbered paragraph.

*In re Zaleha,* 159 B.R. at 583–584, *quoting, In re Lerch,* 147 B.R. at 460.

▮ Here, the debtors concede none of the first four tests has been met. Therefore, the nature of the transaction must be determined based upon the specific facts in this case. In making this determination the key issue is "whether the lessor retains a meaningful residual interest" at the end of the lease term. *In re Zaleha,* 159 B.R. at 585. We use the first two factors of the old seven part test.

> If a lease contains an option to purchase for no or nominal consideration (factor 1 of the seven-point test), it suggests that the lessor does not care, in an economic sense, whether or not the option is exercised. If the lessee develops equity in the leased property such that the only sensible decision economically for the lessee is to exercise the option (factor 2 of the test, also known as the "economic realities" test), it suggests the lessor did not expect the return of the leased goods. As a result, these two factors, in contrast to the others, have been recognized as the more important in determining the lease/security interest distinction. *Arnold Machinery, supra,* 86 I.B.C.R. at 29. *See also Eimco Corp. v. Sims,* 100 Idaho 390, 598 P.2d 538, 541–42 (Idaho 1979) ("equity in the lessee is one of the distinctive characteristics of a lease intended for security").

*In re Zaleha,* 159 B.R. at 585.

The other five factors previously relied upon by the courts are now listed in the second paragraph of Idaho Code § 28–1–201(37) as factors which do not necessarily cause a lease to be a disguised security transaction. As explained by the commentary to the amended U.C.C. § 1–201(37):

**3.** The old version of Idaho Code § 28–1–201 provided in relevant part:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security Idaho Code § 28–1–201(37) (1979).

> The prior Washington statute was substantially similar to this Idaho statute. *See* Wash.St. 62A.1.201(37) (1992).

[C]ourts have relied upon factors that were thought to be more consistent with sales or loans then [sic] leases. Most of these criteria, however, are as applicable to true leases as to security interests. Examples include the typical net lease provisions, a purported lessor's lack of storage facilities or its character as a financing party rather than a dealer in goods.

U.C.C. § 1–201(37) official comment (1987 amendment).

For example:

It makes sense that a lessee would provide insurance on the property while in possession of it under a lease; it seems perfectly reasonable for a lessee to agree to undertake some of the risks of loss or damage while the lessee enjoys possession and use of the property. The same holds true for taxes and maintenance. *Basic Leasing, Inc. v. Paccar, Inc.*, 1991 WL 117412, at *4 (D.N.J.1991). "Costs such as taxes, insurance and repairs are necessarily borne by one party or the other. They reflect less the true character of the transaction than the strength of the parties' respective bargaining positions." *In re Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1146 (7th Cir.1982).

*In re Zaleha,* 159 B.R. at 584.

■ The debtors have conceded the first two of the old seven factors favor a finding the agreement is a lease, *i.e.* the repurchase price is not nominal (the first factor) and the debtors have no equity in the Van (the second factor). Thus, the economic reality of the situation is that the lessor will have a substantial residual interest in the Van at the end of the lease term. Accordingly, under the newly revised Idaho Code section, the agreement is a true lease.

■ However, the debtors contend that because on the date the agreement was entered into neither Washington nor Idaho had adopted the current version of U.C.C. 1–201(37), the Court should ignore the new test and apply the old seven factor test.

In *Woodson v. Ford Motor Credit Company (In re Cole),* 114 B.R. 278 (N.D.Okl.1990), the district court considered two bankruptcy cases, one of which applied the amended version of U.C.C. § 1–201(37) retroactively to a lease entered into prior to the effective date of the amended Oklahoma statute and one which declined to apply the amendment retroactively:

It appears to the Court that the 1988 amendment merely revised § 1–201(37) to further aid courts in drawing lines between leases and agreements creating security interests. The amendment did not change the substantive law.... The official comments to the uniform version of the amended § 1–201(37) also observe that "the task of sharpening the line between true leases and security interests disguised as leases continues to be a function of this section." *See* U.C.C. § 1–207(37) official comment (1988).

. . . .

From this Court's comparison of § 1–201(37) and its 1988 amended version, the Court finds that no substantive changes were made to that statute which would prevent the application of the amended version in pending proceedings such as these.... The Court concurs in the commentators' observations, ... that the 1988 amendment merely clarified the factors that distinguish a lease from a secured transaction....

*In re Cole,* 114 B.R. at 281–282.

We agree. The amendment was intended to clarify, not change the law. Accordingly, the amendment should be applied to all actions determined after its passage regardless of whether the agreement was entered into pre-amendment.

■ Further, even absent consideration of the clarifying amendment, the agreement is a true lease. Although the courts have traditionally given some weight to the other five factors, the first two factors (i.e. equity in the lease and the lessor's residual interest) have always been considered the most important. *See Arnold Machinery Company v. Trustee Services Corporation (In re Hodge Lumber Company),* 86 I.B.C.R. 28, 29 (Bankr.Idaho 1986) ("obtaining of equity in the leased property and the payment of a nominal option are the crucial factors in determining a lease is a security agreement."); *Rainier*

*National Bank v. Inland Machinery Co.,* 631 P.2d at 394–395 (factors such as who is responsible for the taxes and insurance, and whether the rental payments can be accelerated are better evidence of bargaining power then of whether the lease is a security agreement); and *Eimco Corporation v. Sims,* 100 Idaho 390, 598 P.2d 538, 541–542 (Idaho 1979) (equity in the lease is the distinctive characteristic of a disguised security agreement).

Here, the first two factors indicate the debtors do not have an equity interest and FMCC has a significant residual interest in the Van. The option price is not nominal. The fact that several of the minor factors including risk of loss, warranty, taxes and the ability of the lessor to accelerate payments on default suggest the possibility of a secured transaction is not sufficient to out weight the fact the debtors do not have and will not gain an equity interest in the Van.

> While these are three factors which should be considered, it must be remembered these costs, insurance, taxes, and the like, are going to be borne by one party or the other. The lessor is either going to include those costs within the rental charge or agree to a lower rent if the lessee takes responsibility for them.

*Rainier National Bank v. Inland Machinery Co.,* 631 P.2d at 395.

Similarly, the fact FMCC acquired the Van for the purpose of leasing it to the debtors is negated by FMCC's substantial residual interest in the Van.

■ Accordingly FMCC's motion to assume or reject the lease will be granted. Since the debtors have conceded they are unable to cure the arrears in the lease payments, the debtors shall surrender the Van to FMCC.

A separate order will be entered.