**In re Richard S. LERCH and Korena K. Lerch, Debtors.**

**Bankruptcy No. 92–81903.**

United States Bankruptcy Court, C.D. Illinois.

Dec. 1, 1992.

Frank J. Galvin, Rock Island, Ill., for debtors.

Steven L. Nelson, Rock Island, Ill., for FMCC.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The following facts are not disputed. On August 4, 1989, Debtor, Korena K. Lerch, f/n/a Korena K. Smith, and a non-debtor, Dwight T. Smith, entered into a net closed end lease agreement with Lindquist Ford, Inc. to lease a new 1989 Ford Escort for forty-eight (48) months. With the Debtor's knowledge, Lindquist Ford, Inc., then as-signed the lease to Ford Motor Credit Company (FMCC).

On August 10, 1992, the Debtors filed for Chapter 13 bankruptcy. The Debtors' Chapter 13 Plan calls for FMCC to be paid as a secured creditor the sum of $3,465.00 or 100% of its filed claim. FMCC, as Lessor, timely filed a Proof of Claim as an unsecured creditor in the amount of $3,273.18 and filed an Objection to Debtors' Plan on the basis that Section 365 of the Bankruptcy Code, 11 U.S.C. Section 365, had not been complied with, in that neither the Trustee nor the Debtor had assumed the unexpired lease, cured the default or provided adequate assurance that the default would be promptly cured, or provided adequate assurance of future performance of the unexpired lease. A hearing on confirmation was held on October 1, 1992. The objection to confirmation was taken under advisement and the parties were given an opportunity to file briefs. Both did.

The vehicle is titled in the name of FMCC. Under the terms of the lease, Debtor is obligated to pay $192.54 per month, for a total of $9,241.92. The lease contains a purchase option exercisable after the lease expires. The purchase option allows the Debtor to pay FMCC $2,679.31 in order to purchase the vehicle. The purchase option price equals the residual value of the lease after the expiration of the four year lease. Moreover, if the Debtor decides not to exercise the option, the lease provides that the vehicle would be returned to FMCC. However, if the Debtor fails to return the vehicle after the lease expiration, the lease contains a provision penalizing the Debtor by requiring the Debtor to make the monthly payments contained in the lease for each month the Debtor refuses to return the vehicle, requiring the Debtor to return the vehicle, and assessing the Debtor an amount representing damages which FMCC might incur because of the failure to return the vehicle. The lease also contains a voluntary early termination clause which allows the Debtor to terminate the lease. In such an event the Debtor is required to pay an early termination fee, which is the difference between the adjusted balance subject to lease charges

and the realized value of the vehicle, and all other amounts then due under the lease. The lease states that the Debtor must pay for the insurance, registration and licensing fees, taxes, and repair costs.

The issue in this case is whether the lease between the Debtor and FMCC is a true lease which requires the Debtor to comply with Section 365 of the Bankruptcy Code, or a disguised security agreement, which is not subject to Section 365.

The existence, nature and extent of a security interest in property is governed by state law. *In re Powers*, 138 B.R. 916, 917 (D.C.Ill.1992). Bankruptcy courts sitting in Illinois look to the Commercial Code provision contained in Illinois Revised Statutes, Chapter 26, Section 1–201(37) for the test to determine whether an agreement is a true lease or a security agreement.[1]

Prior to its amendment, Section 1–201(37) provided as follows:

> Security interest means an interest in personal property or fixtures which secures payment or performance of an obligation.... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease intended for security and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

In discussing the issue of whether a lease was a true lease or a disguised security agreement, the court in *In re Loop Hosp. Partnership*, 35 B.R. 929 (Bkrtcy. N.D.Ill.1983), stated:

There are no absolute standards by which to distinguish a true lease from a secured transaction, though many courts have earmarked persuasive facts as indicative of the parties' intentions. The problem of identifying and distinguishing the two arises when the parties designate the contract as a lease, but distribute the terms of ownership as if the parties were sellers and purchasers. Viewed broadly, the agreement in question before this court is just such a case: the parties have designated the contract as a lease but the terms of ownership bear a strong resemblance to a relationship where the parties are sellers and purchasers. While the debtor must assume equipment expenses, pay insurance costs and indemnify creditor from all claims, the debtor does not have the option to purchase the equipment at the end of the five year term and the contract specifically calls for the return of the equipment to the creditor. Therefore, the agreement includes many terms typically found in true leases as well as conditional sales agreements and a more specific inquiry is required to determine its true nature.

As in any contract, it is important to determine the parties' intentions. The intent of parties to a contract must be determined from the language of the whole instrument. Effect must be given to each word, clause or term; none should be rejected for lack of meaning or surplusage. *Nice Ball Bearing Co. v. Lescure*, 227 F.2d 118 (7th Cir.1955); *Lathrop v. Bell Federal Savings and Loan Association*, 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977).

Where essential elements of a sale are present, the transaction will constitute a sale even though it may have some fea-

---

**1.** The lease agreement was entered into on August 4, 1989. On June 26, 1991, the Illinois Legislature amended Section 1–201(37) with an effective date of January 1, 1992. Neither party has raised an issue of the application of the amendment. In *In re Cole*, 100 B.R. 561 (Bkrtcy.N.D. OK 1989) the bankruptcy court held the amended provision could be retroactively applied as it did not involve a substantive change and only clarified a confused area of the

law. In *In re Thompson*, 101 B.R. 658 (Bkrtcy. N.D.OK, 1989) another bankruptcy court held the amendment could be applied only prospectively. On a consolidated appeal, the district court reversed *In re Thompson* in *In re Cole*, 114 B.R. 278 (D.C.N.D. Okl.1990). As the parties in this case have not raised the issue and as this Court concludes a lease exists under either version of Section 1–201, the issue need not be decided.

tures of some other form of transfer. *See Williston on Sales*, (Squillante & Fonseca, 4th Ed.1973). For example, although an agreement is denominated a lease, if the substantive provisions indicate it is in fact a sale, it will be deemed a sale. The parties cannot change the legal effect of an instrument simply by giving a name to it. *Szabo Food Service, Inc. of North Carolina v. Balentine's Inc.*, 15 UCC Rep.Serv. 170, 285 N.C. 452 [206 S.E.2d 242] (1974). The instrument may disguise actual intentions and therefore it is important to analyze beyond the document's face. *See Hervey v. Locomotive Works*, 93 U.S. 664, 673, 23 L.Ed. 1003 where the court held that the lease form was used to "cover the real [sales] transaction.")

■ Just as in *In re Loop Hosp. Partnership, supra,* in the case before this Court, the lease has provisions typical to both true leases and security agreements. However, there are two provisions which this Court concludes are controlling in finding the lease is a true lease under pre-amended Section 1–201(37). First, the Debtor can terminate the lease. Second, the Debtor can exercise an option to purchase at the end of the lease period for an amount of $2,679.31, and there was no evidence to establish that amount was merely a nominal consideration so as to bring the lease within the provisions of Paragraph (b) of Section 1–201(37). The option price of $2,679.31 represents 26.289% of the total payments under the lease. In *In re Access Equipment, Inc.*, 62 B.R. 642, 1 UCC Rep. Serv.2d 1310 (Bkrtcy.D.Mass.1986), the court referred to the frequently applied 25% test for determining what is "nominal", stating:

The most significant factor in distinguishing the conditional sale masquerading as a lease and a true lease is the relationship of the option price to the value of the goods at the end of the lease term. In the instant case, the Equipment Rental Agreement, which was not signed by the representatives of [the creditor] contains no option provision. However, by the March 16, 1985 agreement of the parties, Equipment was granted the option to purchase work platforms for $36,000, less one half the rental payments made, a price that cannot be considered nominal by any stretch of the imagination. As pointed out by Satellite and relied upon by a number of courts, "[I]f the option price amounts to 25% or more of the total list price, then the 'lease' is not one intended for security." J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code 881 (2d ed. 1980) [Citations omitted]. Commentators conclude that this rule of thumb is consistent with the "economic realities test." That test provides that if at the end of the lease term the only sensible course economically for the lessee would be for him to exercise his option the transaction is really a secured installment sale to which Article Nine applies.

The amended version of Section 1–201(37) provides as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option *to* renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional

consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(y) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(z) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances as of each case at the time the transaction was entered into.

The Official Uniform Commercial Code Comments (COMMENTS) discuss the amendment in part as follows:

Thus, the task of sharpening the line between true leases and security interests disguised as leases continues to be a function of this section.

. . . .

Reference to the intent of the parties to create a lease or security interest has led to unfortunate results. In discovering intent, courts have relied upon factors that were thought to be more consistent with sales or loans than leases. Most of these criteria, however, are as applicable to true leases as to security interests. . . . Accordingly, amended Section 1–201(37) deletes all reference to the parties' intent.

The second paragraph of the new definition is taken from Section 1(2) of the Uniform Conditional Sales Act (act withdrawn 1943), modified to reflect current leasing practice. . . . Whether a transaction creates a lease or a security interest continues to be determined by the facts of each case. The second paragraph further provides that a transaction creates a security interest if the lessee has an obligation to continue paying consideration for the term of the lease, if the obligation is not terminable by the lessee . . . and if one of four additional tests is met. . . . All of these tests focus on economics, not the intent of the parties.

The focus on economics is reinforced by the next paragraph, which is new. It states that a transaction does not create a security interest merely because the transaction has certain characteristics listed therein....

The relationship of the second paragraph of this subsection to the third paragraph of this subsection deserves to be explored. The fixed price purchase option provides a useful example. A fixed price purchase option in a lease does not of itself create a security interest. This is particularly true if the fixed price is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed. A security interest is created only if the option price is nominal and the conditions stated in the introduction to the second paragraph of this subsection are met. There is a set of purchase options whose fixed price is less than fair market value but greater than nominal that must be determined on the facts of each case to ascertain whether the transaction in which the option is included creates a lease or a security interest.

It was possible to provide for various other permutations and combinations with respect to options to purchase and renew. For example, this section could have stated a rule to govern the facts of *In re Marhoefer Packing Co.*, 674 F.2d 1139 (7th Cir.1982). This was not done because it would unnecessarily complicate the definition. Further development of this rule is left to the courts.

U.C.C. Reporting Service, Code Section 1–201.

■ The inquiry now focuses on an interpretation of amended Section 1–201(37). FMCC argues for a single two-prong test. First, is the lease terminable? Second, does the lease contain one of the four terms enumerated by the second unnumbered paragraph of amended Section 1–201(37)? If FMCC is correct, then a finding that the debtor could terminate the lease, which is the correct result in this case, would classify the lease as a true

lease and no further inquiry need is required. FMCC's interpretation is incorrect.

■ A correct interpretation starts by recognizing that under amended Section 1–201(37) intent is no longer the key. The key is the economics of the transaction. This can be gleaned from a comparison of the language of the pre-amended section 1–201(37), which referred to intent, to amended Section 1–201(37) which doesn't, and the COMMENTS which confirm this interpretation.

The initial portion of the first sentence of the second unnumbered paragraph contains the basic direction that the determination is made based on the facts of each case. The latter portion of the first sentence of the second unnumbered paragraph starting with the word "however" creates an exception to the basic direction that the determination is made on the facts of each case, as it provides that without looking at all the facts, a lease will be construed as a security interest if a debtor cannot terminate the lease, and if one of the four enumerated terms is present in the lease.

Absent a mandated classification, the determination is based on the facts of the case. At this point the third unnumbered paragraph comes into effect. Focusing on the economics of the transaction, it states that a security interest is not created merely because it contains any of the five terms enumerated in the third unnumbered paragraph.

Applying amended Section 1–201(37) to the facts of this case is facilitated by the fact that a fixed price purchase option is involved which is the example used by the COMMENTS to explain the effect of amended Section 1–201(37). The Debtor can terminate the lease and none of the four terms enumerated by the second unnumbered paragraph of amended Section 1–201(37) are found in the lease. Therefore, the mandated classification of amended Section 1–201(37) is not required. The lease does contain a fixed price purchase option. The COMMENTS make it clear that type of term in and of itself does not create a security interest, which is particularly true if the fixed price of the purchase

option equals or will exceed the fair market value of the vehicle at the time the purchase option is exercised. The only evidence presented as to the expected fair market value of the vehicle at the time the purchase option was to be performed is the lease itself. It provides that the fixed price of the purchase option is the same as the residual value of the lease, thereby supporting the finding that the lease is a true lease.

■ The lease also requires the Debtor to assume the risk of loss and to pay certain expenses associated with the vehicle, the types of terms referred to in subparagraph (b) of the third unnumbered paragraph. However, these terms are not sufficient per se to create a security interest. As is pointed out in the COMMENTS, these kinds of terms are typical to a net lease, and in *In re Marhoefer Packing Company, Inc.*, 674 F.2d 1139, 1146 (7th Cir.1982) the court stated:

Although Marhoefer was required to pay state and local taxes and the cost of repairs, this fact does not require a contrary result. Costs such as taxes, insurance and repairs are necessarily borne by one party or the other. They reflect less the true character of the transaction than the strength of the parties' respective bargaining positions. *See also Rainier National Bank [v. Inland Machinery Co.] supra,* [29 Wash.App. 725] 631 P.2d [389] at 395 ("The lessor is either going to include those costs within the rental charge or agree to a lower rent if the lessee takes responsibility for them.")

For these reasons this Court holds that in this case the lease is a true lease, and that the Debtors' Chapter 13 plan should not be confirmed. The findings and holdings of this Opinion are limited to this case.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ORDER

For the reasons set forth in the Opinion entered this day;

IT IS, THEREFORE, ORDERED:

1. Confirmation of the Debtors' Chapter 13 Plan is DENIED.

2. Debtors are given fourteen (14) days to file an amended Plan, or the Chapter 13 proceeding will be dismissed.