### In re Edmond C. MURRAY.

### Bankruptcy No. 94–22109T.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 1, 1996.

---

John A. DiGiamberardino, Wyomissing, PA, for Debtor.

Anthony R. Distasio, Linton & Gianascoli, Reading, PA, for CoreStates Bank, N.A.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is the motion of Core-States Bank, N.A. ("movant") requesting relief from the automatic stay and/or turnover of property ("motion") in the possession of debtor, Edmond C. Murray ("debtor"). The issue presented is whether a document denominated "Motor Vehicle Lease and Disclosure Statement" ("Lease") is in fact a "true lease" or alternatively, an installment purchase agreement with a security interest. For the reasons stated herein, we conclude that the Lease is a true lease subject to assumption or rejection by debtor pursuant to § 365(a) of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 365(a). Consistent with this conclusion, debtor shall be provided an opportunity either to reject the Lease or to assume the Lease and cure past defaults.

## JURISDICTIONAL STATEMENT

We observe that this is a core proceeding over which we have jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), 157(b)(2)(A), (E), (G) and (O).

## BACKGROUND

As previously noted, the issue before us is whether the Lease is a "true lease" of a 1994 Dodge conversion van, Vehicle Identification Number 2B7HB21X6RK126962 ("Vehicle"), or rather, as debtor contends, a disguised security agreement. Simply put, debtor urges us to construe the Lease as a security agreement so he may retain possession of the Vehicle by bifurcating movant's claim into secured and unsecured components, e.g. 11 U.S.C. § 506(a), "cramdown" the secured portion of the claim to the current fair market value of the Vehicle, e.g. 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5)(B), and then pay the full amount of the secured claim under an amended Chapter 13 plan.[1] If, on the other hand, we conclude that the Lease is in fact a true lease, then debtor may only retain the Vehicle by assuming the Lease and complying with 11 U.S.C. § 365, which requires that debtor cure prior defaults, or give adequate assurance that prior defaults will be cured, and give adequate assurance that future obligations will be performed.

The following factual record was developed from the parties' submissions and the evidence received at the hearing.

Movant introduced into the record, as Exhibit "M-1," a copy of the Lease which was executed by debtor and D'Ambrosio's Dodge-North, Inc., on or about June 10, 1994. At the hearing, debtor's counsel stipu-

---

1. Debtor's proposed chapter 13 plan, which requires payments to the trustee in the amount of $200.00 per month for 60 months, does not provide for any payments to movant. At the hearing, however, debtor testified that it was his intention to file an amended 13 plan under which movant will be paid the fair market value of the Vehicle. Debtor stated that his amended plan would be funded from the proceeds he expects to receive from the sale of an asset listed in Schedule "B" as a 1967 Colonial motor yacht ("Boat"). The Scheduled value of this asset is $20,000.00. At the hearing, debtor testified that he has been in contact with a potential buyer for the Boat, and that his asking price is $14,000.00. During his testimony, however, debtor stated that he would be lucky to receive $10,000.00 for the Boat. Thus, the feasibility of such an amended chapter 13 plan appears to be doubtful when one considers that even the full asking price for the Boat falls short of the $17,985.00 which movant alleges is the current market value of the Vehicle, especially since debtor offered no evidence of the Vehicle's current market value.

lated that: *a)* the Lease was assigned to First Pennsylvania Consumer Services, Inc. ("First Pennsylvania"); *b)* movant is the successor-in-interest to First Pennsylvania; and *c)* movant is a party in interest in debtor's bankruptcy proceeding and therefore has standing to bring this action.

On its face, the Lease specifies an "Initial Lease Term" of sixty months, requiring payments by the "lessee," identified therein as debtor, in the amount of $436.50 per month. *Id.* The Lease provides for an "Annual Mileage Allowance" of 15,000 miles per year, or 75,000 total miles during the lease term, subject to an "Excess Charge" of $.10 per mile for mileage exceeding these limits. *Id.* at ¶ 16. The Lease also provides debtor with the option of purchasing the Vehicle at the end of the lease term by, *inter alia,* paying the "End of Term Price" of $6,894.47, plus "any official fees and taxes" that may be due on account of the sale. *Id.* Debtor may also purchase the Vehicle before the end of the lease term by complying with the early termination provisions contained in ¶ 17, and by paying the "Early Termination Value" as determined under ¶ 18, plus any additional fees, e.g. taxes, license and registration. *Id.* ¶ 11. The Lease specifies a "Monthly Termination Factor" of $300.01 which is applicable to determining the Early Termination Value. *Id.* at ¶ 18. Movant's witness, Thomas C. Hirst ("Hirst"), testified that this sum represents movant's estimate of the Vehicle's monthly depreciation during the term of the lease.

Further, under the terms of the Lease debtor assumed responsibility for: *a)* paying all "official fees ... and taxes" associated with the acquisition, ownership, possession and use of the Vehicle, *id.* at ¶ 7; *b)* obtaining insurance, *id.* at ¶ 10; *c)* paying the costs of "Maintenance, Expenses, Fees, Taxes, Licensing and Inspections," *id.* at ¶ 13; *d)* pay-

ing any "Fines, Tickets, and Penalties," *id.* at ¶ 14; and *e)* paying the costs of any unreasonable wear and use. *Id.* ¶ 16. In addition, during the term of the Lease movant assigned to debtor any new car warranties as well as any rights that might arise under state and federal repair and/or "lemon" laws. *Id.* at ¶ 15.

The registered owner of the Vehicle, as listed on the Certificate of Title, attached as an Exhibit to the Motion, is CoreStates Dealer Services ("CDS"). The title also reflects a first lien in favor of CDS. Debtor testified that the Vehicle is insured, and that movant is designated under the policy as "loss payee."

Hirst testified that the Lease is in default and that debtor's last payment to movant was made on or about December 8, 1994. He further testified that the total balance due under the Lease, including the end of term purchase price, is $24,094.65. Debtor confirmed that he has made no payments on account of the Lease outside of the proposed Chapter 13 plan.[2]

In their memoranda, both parties agree that 13 Pa.C.S.A. § 1201(6) provides the applicable standard by which agreements are evaluated in Pennsylvania to determine whether they constitute security agreements or leases. Movant contends that when these criteria are applied to the facts of this case it becomes clear that the Lease is in fact a "true lease." Movant argues that it is entitled to relief from the automatic stay, presumably under both §§ 362(d)(1) and (2), alleging that: *a)* its interests in the Vehicle are not adequately protected since debtor continues to use the Vehicle but has made no payments under the Lease since December 8, 1994; and *b)* debtor lacks equity in the Vehicle and the Vehicle is not necessary for an effective reorganization.[3]

---

**2.** Debtor filed his chapter 13 petition on December 6, 1994. Debtor's chapter 13 plan was filed on January 3, 1995, with the confirmation hearing originally being scheduled to be held on May 18, 1995. After several continuances, the confirmation hearing is now scheduled to be held on February 8, 1996.

**3.** Alternatively, movant posits that it is entitled to turnover of the Vehicle because the Lease should

be deemed rejected under 11 U.S.C. § 365(d)(1) since debtor failed to assume the Lease within 60 days after the commencement of this case. However, § 365(d)(1) applies only in Chapter 7 cases and therefore, would be inapplicable in this chapter 13 case. Regardless, it appears that movant is no longer relying upon § 365(d)(1) as it did not present any argument in support of this theory either at the hearing or in its brief.

Debtor argues, on the other hand, that while the guidelines contained in 13 Pa. C.S.A. § 1201(6) are instructive, they do not provide the exclusive means by which such agreements are evaluated. Debtor contends, *inter alia*, that the Lease should be construed as a security agreement because most of the normal incidents of ownership of the Vehicle run to him and because, in debtor's estimation, the purchase option price constitutes nominal consideration. It is therefore debtor's position that the Lease is a disguised financing agreement with a security interest which may be crammed down and paid under his chapter 13 plan.

Having thus framed the issues, we now proceed to consider the merits of the parties' positions.

## DISCUSSION

█ It is well established that the determination of whether a particular agreement constitutes a lease or a security agreement for purposes of 11 U.S.C. § 365 is to be made by reference to state law. *E.g. In re Bumgardner*, 183 B.R. 224, 225 (Bankr.D.Idaho 1995); *Phoenix Pipe & Tube, L.P.*, 154 B.R. 197, 199 (Bankr.E.D.Pa.1993). Turning to the law of Pennsylvania, we find that 13 Pa.C.S.A. § 1201 provides the applicable standard for determining whether a transaction creates a lease or a security agreement.

█ We observe that 13 Pa.C.S.A. § 1201 was amended in 1992 to incorporate into Pennsylvania law revised § 1–201(37) of Article 2A of the · Uniform Commercial Code ("UCC").[4] *See* U.C.C. Art. 2A, § 1–201(37) (Supp.1995) (historical notes); 1A J. White & R. Summers *Article 2A Leases of Goods* 8 (3d ed. 1991). The former version of the statute was much less detailed than its cur-

4. Upon review of our decision in *Phoenix Tube*, it appears that the "lease" in that case was dated March 15, 1990, thus predating the July 9, 1993 enactment date of the amended statute. More importantly, however, the parties in *Phoenix Tube* did not argue the applicability of 13 Pa. C.S.A. § 1201 as amended and therefore, our discussion in *Phoenix Tube* was limited to the unamended version of the statute.

5. The former version of 13 Pa.C.S.A. § 1201 (repealed) stated:

rent iteration and led to the development of inconsistent views among courts regarding the criteria to be applied in determining whether an agreement creates a true lease or a security interest.[5] *See e.g. Carlson v. Giacchetti*, 35 Mass.App.Ct. 57, 616 N.E.2d 810, 812 (1993); White & Summers at p. 14. In contrast, the revised statute provides standardized provisions intended to focus a court's inquiry on the most salient criteria for distinguishing between true leases and those intended for security. White & Summers at p. 9. In the words of one commentator, in amending U.C.C. § 1–201(37) the drafters attempted to "re-assert the significance of residual value as the touchstone of the common law definition of true leases." Naples, *A Review and Analysis of the New Article 2A*, 93 Com.L.J. 342, 349 (1988); *accord, Bumgardner*, 183 B.R. at 228; *Carlson*, 616 N.E.2d at 813.

In pertinent part, 13 Pa.C.S.A. § 1201(6), states as follows:

> (6) DETERMINATION OF LEASE OR SECURITY INTEREST. Whether a transaction creates a lease or security interest is determined by the facts of each case; however:
>
> (i) A transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:
>
> (A) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>
> (B) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

Whether a lease is intended as security is to be determined by the facts of each case; however: *(1)* the inclusion of an option to purchase does not of itself make the lease one intended for security; and
*(2)* an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
*Id.*

**314**

*(C)* the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

*(D)* the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

*(ii)* A transaction does not create a security interest merely because it provides that:

*(A)* the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

*(B)* the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording or registration fees, or service or maintenance costs with respect to the goods;

*(C)* the lessee has an option to renew the lease or to become the owner of the goods;

*(D)* the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

*(E)* the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

*Id.*[6]

 The parties have not referred us to any reported decisions from the courts in Pennsylvania, state or federal, which interpret 13 Pa.C.S.A. § 1201(6). Our own research has confirmed that indeed there are none. Since, however, the Pennsylvania statute is based on U.C.C. § 1–201(37), we are guided by decisions from other jurisdictions which interpret this uniform statute. *See e.g. Adams v. Slonim,* 924 F.2d 256, 260 n. 7 (D.C.Cir.1991); *Western Branch Holding Co. v. Trans Marketing Houston, Inc.,* 722 F.Supp. 1339, 1342–43 (E.D.Va.1989).

The judicial opinions construing U.C.C. § 1–201(37) and the Official Uniform Commercial Code Comments ("Comments") clearly place the focus of the inquiry under the revised statute on the economics of the transaction rather than on the intent of the parties as had been the emphasis previously. *E.g. Carlson,* 616 N.E.2d at 813. The Comments explain:

Reference to the intent of the parties to create a security interest has led to unfortunate results. In discovering intent, courts have relied upon factors that were thought to be more consistent with sales or loans than leases. Most of these criteria however, are as applicable to true leases as

---

6. 13 Pa.C.S.A. § 1201(6) also provides:

*(iii)* For purposes of determining whether the transaction is a lease or a security interest:

*(A)* Additional consideration is not nominal if:

*(I)* when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

*(II)* when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

*(B)* "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into.

*(C)* "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

*Id.*

to security interests.... Accordingly, amended Section 1–201(37) deletes all reference to the parties' intent.

U.C.C. § 1–201 (historical notes).

We observe that revised U.C.C. § 1–201(37) consists of several new paragraphs and detailed standards which are to be employed in determining the lease/security interest issue. The following analysis, established by the Bankruptcy Court in *In re Lerch*, 147 B.R. 455 (Bankr.C.D.Ill.1992) (applying I.C. § 28–1–201(37), an Illinois statute that is substantially similar to 13 Pa.C.S.A. § 1201), provides guidance in applying the new statute. *Accord, In re Zaleha*, 159 B.R. 581, 583 (Bankr.D.Idaho 1993).

The initial portion of the first sentence of the second unnumbered paragraph contains the basic direction that the determination is made based on the facts of each case. The latter portion of the first sentence of the second unnumbered paragraph starting with the word "however" creates an exception to the basic direction that the determination is made on the facts of each case, as it provides that without looking at all the facts, a lease will be construed as a security interest if a debtor cannot terminate the lease, and if one of the four enumerated terms is present in the lease.

Absent a mandated classification [e.g. that the agreement is a security interest], the determination is based on the facts of the case. At this point the third unnumbered paragraph comes into effect. Focussing on the economics of the transaction, it states that a security interest is not created merely because it contains any of

the five terms enumerated in [that] paragraph.

*Id.* at 460.[7]

■■■ Having thus explored the background of the changes made to 13 Pa.C.S.A. § 1201(6), as well as their practical application, we turn to the facts of this case. Here, we observe that since debtor has the ability to terminate the Lease unilaterally prior to the end of the lease term, the Lease cannot be deemed a security interest as a matter of law under the exception provided in 13 Pa. C.S.A. § 1201(6)(i).[8] *Lerch*, 147 B.R. at 460. Therefore, the lease/security interest issue must be "determined by the facts of [the] case." 13 Pa.C.S.A. § 1201(6). Our attention is thus directed to an examination of the non-exclusive list of factors enumerated in 13 Pa.C.S.A. § 1201(6)(ii). *Lerch*, 147 B.R. at 460. The key emphasis at this point of the inquiry is on whether movant retains a meaningful residual interest in the Vehicle. *See Bumgardner*, 183 B.R. at 228; *see also In re Aspen Impressions, Inc.*, 94 B.R. 861, 866 (Bankr.E.D.Pa.1989) (discussing the revisions made to U.C.C. § 1–201(37) prior to their enactment in Pennsylvania).

Our analysis is facilitated by the fact that the Lease contains a fixed price purchase option. As explained by the Bankruptcy Court in *Lerch*, this circumstance was used in an example discussed in the Comments. In pertinent part, the Comments state:

The relationship of the second paragraph of this subsection to the third paragraph ... deserves to be explored. The fixed price purchase option provides a useful example. A fixed price purchase option in a lease does not in and of itself create a security interest. This is particularly true if the fixed price is equal to or greater

---

7. The paragraphs of I.C. § 28–1–201(37) are unnumbered, as are those of U.C.C. § 1–201(37). In contrast, 13 Pa.C.S.A. § 1201 is organized differently than both its Illinois and U.C.C. counterparts. As enacted in Pennsylvania, the first paragraph of § 1–201(37) is divided into five separate subsections. E.g. 13 Pa.C.S.A. §§ 1201(1)–(5). Paragraph (6) of 13 Pa.C.S.A. § 1201 is an amalgam comprised of both the second and third paragraphs of § 1–201(37) and is itself divided into sub-parts (i), (ii) and (iii). Thus, the Pennsylvania counterparts to the second and third unnumbered paragraphs of the

Illinois statute referred to in *Lerch* are 13 Pa. C.S.A. §§ 1201(6)(i) (inclusive) and § 1201(6)(ii), respectively. The foregoing distinctions, however, do not represent any substantive differences between the statutes.

8. Had debtor not been granted the right to terminate the Lease prior to the expiration of its term and if one of the four factors outlined in 13 Pa.C.S.A. § 1201(6)(i)(A)–(D) could be established, the Lease would be deemed a security agreement under § 1201(6)(i).

than the reasonably predictable fair market of the goods at the time the option is to be performed. *A security interest is created only if the option price is nominal and the conditions stated in the introduction to the second paragraph of this subsection are met.* U.C.C. § 1–201(37) (historical notes) (emphasis added).

In the instant case, the only evidence in the record concerning the reasonably predictable fair market value of the Vehicle at the time that the purchase option was to be performed is the Lease itself, which establishes an End of Term Price of $6,894.47, and the testimony of movant's witness Hirst. Hirst testified that the End of Term Price represented movant's estimate of the end of term residual value of the Vehicle calculated at the time the Lease was executed. Movant's estimate of the fair market value of the Vehicle is consistent with 13 Pa.C.S.A. § 1201(6)(iii)(B) which generally provides that "reasonably predictable fair market value" is to be determined with reference to the facts and circumstances extant at the time the transaction is entered into, not at a later time, e.g., at the end of the lease term when the actual fair market value can be determined with certainty. *Id.* Debtor, whose burden it is prove that the Lease is other than what it purports to be, *Zaleha*, 159 B.R. at 586, neither offered evidence to rebut movant's proof of the Vehicle's estimated residual value of $6,894.47 nor introduced any evidence to show that this sum is nominal. Thus, the fact that the fixed option purchase price is equal to movant's estimate of the residual value strongly supports the conclusion that the Lease is a true lease. *Lerch,* 147 B.R. at 461; Comments, U.C.C. § 1–201(37) (historical notes).

Debtor contends, however, that the Lease creates a security interest because under its terms he has assumed responsibility for many of the usual semblances of ownership of a motor vehicle, e.g. the risk of loss and payment of taxes and fees, maintenance costs, etc. The statute is clear, however,

that a transaction does not create a security interest merely because "the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording or registration fees, or service or maintenance costs with respect to the goods." 13 Pa.C.S.A. § 1201(6)(ii)(B). Contrary to debtor's position, these kinds of factors are typical of "net" leases, *Lerch,* 147 B.R. at 461, and "reflect less the character of the transaction than the strength of the parties' respective bargaining positions." *In Marhoefer Packing Co., Inc.,* 674 F.2d 1139, 1146 (7th Cir. 1982).

Debtor also contends that the economics of the transaction compels the conclusion that it is a security agreement rather than a true lease. In this regard, debtor posits that the Lease is identical to an installment purchase, and should therefore be construed as creating a security interest, because the present value of the lease payments and the end of term price is approximately equal to the price at which movant purchased the Vehicle.[9] This argument, however, ignores subsections (A) and (E) of 13 Pa.C.S.A. § 1201(6)(ii), which state that a transaction does not create a security interest merely because the present value of the lease payments is "substantially equal to or greater than the fair market value of the goods at the time the lease is entered into," *id.* at § 1201(6)(ii)(A), or because the lessee can become the owner of the Vehicle by paying a sum that is equal to its "reasonably predictable fair market value" at the end of the lease term. *Id.* at § 1201(6)(ii)(E).

Furthermore, in order for the Lease to have created a security interest it must have provided debtor with some ownership interest in the Vehicle. *In re Winston,* 181 B.R. 589, 594 (Bankr.N.D.Ala.1995). The evidence establishes, however, that the Lease provided debtor only with the use and possession of the Vehicle which was at all times owned by movant. The evidence further established that debtor's use of the Vehicle was defined by a set term, at the completion of which debtor was obligated to either return

___

9. Hirst testified that movant purchased the Vehicle from D'Ambrosio's Dodge–North, Inc. for the sum of $23,372.00.

the Vehicle or pay movant a fixed purchase price equal to the reasonably predictable fair market value of the Vehicle at the end of the term. Neither anything in the Lease nor the evidence presented at the hearing supports debtor's claim to an ownership interest in the Vehicle.

Based on the foregoing, we conclude that debtor has not satisfied his burden of demonstrating that the Lease is a security agreement rather than a true lease as denominated on its face. Consistent with this conclusion, debtor shall be provided a reasonable opportunity to assume or reject the Lease pursuant to the provisions of 11 U.S.C. § 365.

An Order consistent with the foregoing Opinion shall be entered.

### *ORDER*

AND NOW, this 1st day of February, 1996, upon consideration of the motion of CoreStates Bank, N.A. ("movant") for relief from the automatic stay and/or for turnover of property, a 1994 Dodge Conversion Van, Vehicle Identification Number: 2B7HB21X6RK126962 ("Vehicle"), in the possession of the debtor Edmond C. Murray ("debtor"), the legal arguments presented by the parties in their briefs, and the evidence introduced into the record at the hearing on the motion, it is hereby **ORDERED** that the document introduced into evidence as Exhibit "M–1," bearing the caption—Motor Vehicle Lease and Disclosure Statement ("Lease"), is determined to be a "true lease" for purposes of § 365(a) of the United States Bankruptcy Code, 11 U.S.C. § 365.

**IT IS FURTHER ORDERED** that debtor shall have ten (10) days from the date of this Order within which to file a motion to assume or reject the Lease under 11 U.S.C. § 365 and Fed.R.Bankr.P. 6006(a).

**IT IS FURTHER ORDERED** that if the Lease is assumed, debtor shall cure all arrearages by **February 28, 1996** and shall thereafter remain current on all future payments to movant outside of debtor's chapter 13 plan, failing which movant may file an

appropriate pleading to pursue its rights and remedies.