**In re Jisun KIM d/b/a Wedgewood Cleaners, Inc., and Kyong Ae Kim, Debtors.**

**Bankruptcy No. 98–35479 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 26, 1999.

Mary Jeffery, Philadelphia, PA, for Debtor.

Frederick L. Reigle, Reading, PA, Chapter 13 Trustee.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is a Motion filed by Hamilton Leasing Company ("Hamilton") for relief from the automatic stay pursuant to § 362(d) of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330.[1] Hamilton seeks relief from the stay with respect to certain personal property in the possession of Debtor JiSun Kim, d/b/a Wedgewood Cleaners, Inc., pursuant to a document captioned Equipment Lease (the "Lease"). Joint Debtor Kyong Ae Kim is a guarantor, with Debtor JiSun Kim, of Wedgewood's obligations under the Lease. The subject property is described in a schedule attached to the Lease and generally appears to be equipment used in the operation of a dry cleaning business. *See* Petition, Schedule I (occupation of Debtor JiSun Kim described as "dry cleaner"). In their Answer to the Motion the Debtors challenged the nature of the transaction between Wedgewood and Hamilton by asserting that the Lease is not a true lease, but rather a disguised security agreement.

A hearing on the Motion was scheduled for February 10, 1999. On the morning set for the hearing, but prior to the commencement thereof, the Debtors converted their Chapter 7 bankruptcy case to a proceeding under Chapter 13. At the hearing the Debtors argued that the Motion was moot due to the conversion of the case to Chapter 13, ostensibly because their rights in and to the property were different in Chapter 13. Taking judicial notice of the differing rights a Chapter 13 debtor might have in property depending, for instance, on whether such property is subject to a leasehold interest, *e.g.,* Code § 365(d)(2) (right to assume or reject executory leases), or a security interest, *e.g.,* Code § 1325(a)(5)(B) ("cram-down" power), the Court deemed it advisable to determine as

---

1. The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. § 1334 and § 157(a), § 157(b)(1), and § 157(b)(2)(A), (G) and (*O*).

a preliminary matter whether the Lease is a true lease or a disguised security agreement.

The parties were in agreement that the foregoing issue could be determined as a matter of law on the record created at the hearing without the need of witness testimony. Included within the present record are the Lease, a copy of which was attached to the Motion, and five exhibits introduced by the Debtors and admitted into evidence at the hearing without objection by Hamilton.[2] The Debtors' exhibits are the following: a) a cover letter from Hamilton to Ji S Kim dated October 27, 1997 with detailed instructions on completing, signing and returning the Lease and certain ancillary documents to Hamilton, Exhibit D–1; b) a "Purchase Option" form, one of the ancillary documents referenced above, bearing the same date as the cover letter and signed by Ji Sun Kim, Exhibit D–2; c) an "Insurance Information" form, another of the ancillary documents, Exhibit D–3; and two UCC–1 financing statements, also a part of the ancillary document package, signed by Ji Sun Kim. Exhibits D4 and D–5, respectively.

The facts relevant to determining this issue are not in dispute. On or about October 31, 1997 Debtor JiSun Kim executed the Lease on behalf of Wedgewood Cleaners. According to the Debtors' bankruptcy petition, Debtor JiSun Kim conducted business under the name Wedgewood Cleaners. Under the terms of the Lease, Wedgewood, designated therein as "Lessee," was to make 60 payments in the amount of $2,256 per month to "Lessor" Hamilton. The Lease states prominently in the signature block, and elsewhere less conspicuously, that the agreement is "non-cancellable" for its designated term.[3] The Court observes that during such term the Lessee was to bear financial responsibility for many items commonly associated with ownership, to wit: maintenance expenses ¶ 13; tax payments, ¶ 14; insurance premiums, ¶ 16; the risk of loss or damage, ¶ 17; and repair costs. ¶ 18. This notwithstanding, the Lease expressly states that the "agreement [is] of lease only," ¶ 10, and should not be construed as conveying any equity interest in the equipment to the Lessee ¶ 7. The Lease does not contain a purchase option.[4] According to the Lease, at the end of the term the Lessee was to return the equipment to the Lessor. ¶ 23. If, however, the equipment were not returned, the Lessor had the "exclusive option" of continuing the Lease on a month to month basis. ¶ 24. The monthly rental payment under such a continuation would be the same as the regular monthly payment due under the Lease. *Id.*

In its Motion Hamilton alleged that Wedgewood failed to make the payment due on September 30, 1998 and all subsequent payments due thereafter. The obligations of Wedgewood under the Lease

2. At the hearing Hamilton requested and was granted the opportunity of submitting a letter brief to the Court within one week after the conclusion of the hearing. Hamilton reserved the right to object in the brief to the admissibility of the Debtors' exhibits on authenticity grounds. No such objection was levied in the brief submitted by Hamilton on or about February 15, 1999.

The Court notes that Hamilton's letter brief was not filed with the Clerk of the Court, but rather was mailed directly to chambers and thus did not appear on the docket in this case as of the time that this Opinion was being drafted. The Court has since directed the Clerk to file the letter brief and enter same on the docket.

3. In ¶ 12 of the Lease the Lessor reserved for itself the exclusive right to terminate the Lease at its option under certain circumstances. The circumstances under which Hamilton could exercise this option are not relevant to the instant proceeding.

4. The Lease states: "No options or agreements for purchase of the equipment by Lessee or extension of the term hereof shall any [sic] be implied. All of the equipment shall remain personal property and title thereto shall at all times remain in the Lessor exclusively." ¶ 10.

were guaranteed by the Debtors. On December 1, 1998 the Debtors filed a petition for relief under Chapter 7 of the Code. Less than one month later, on January 11, 1998, Hamilton filed the instant motion for relief from the automatic stay. The Debtors converted their case to a proceeding under Chapter 13 on the day scheduled for the hearing on Hamilton's Motion. In their Answer the Debtors alleged that the Lease is not a true lease, but rather a disguised security agreement. At the hearing the Debtors argued, relying on Pa.C.S.A. § 1201(6), that the Lease constitutes a security interest because: a) it cannot be terminated by the Lessee during its term; and b) the Lessee has the option of becoming the owner of the equipment at the end of the lease term for nominal consideration in the amount of $1.00 as per the Purchase Option form executed by the Lessee at the direction of Hamilton at the time that the Lease was signed.

Hamilton disputes the Debtors characterization of the Lease as a security agreement. Citing well established principles of contract law, see *Fallon Electric Co., Inc. v. Cincinnati Ins. Co.,* 121 F.3d 125, 127 (3d Cir.1997); *Seasor v. Liberty Mutual Ins. Co.,* 941 F.Supp. 488, 491 (E.D.Pa. 1996), *aff'd,* 116 F.3d 469 (3d Cir.1997); *Williams v. Metzler,* 132 F.3d 937, 947 (3d Cir.1997), Hamilton asserts that where the terms of an agreement are clear and unambiguous, as it contends they are here, the intent of the parties with respect to such agreement may only be discerned by reference to the language contained in the written embodiment of their agreement— in this case, the Lease. In this regard, Hamilton directs the Court's attention to ¶¶ 10, 23 and 24 of the Lease which it contends confirms its nature as a true lease. The referenced provisions, as noted above *supra,* purport to: a) expressly define the agreement as a lease, ¶ 10; b) require the return of the equipment at the end of the lease term, ¶ 23; and c) grant the Lessor the exclusive right to re-

new/continue the Lease upon expiration of the term if the equipment is not returned. ¶ 24. Emphasizing that the Lease itself clearly contemplates the return of the equipment at the end of the term, ¶ 23, and expressly disavows the transfer of any ownership interest in the equipment to the Lessee, ¶ 10, Hamilton contends that the Lease is a true lease and not a disguised security agreement. Citing 13 Pa.C.S.A. 1201(6)(ii), Hamilton also argues that the mere fact that Lease requires the Lessee to, *inter alia,* assume the risk of loss, pay for insurance, taxes, maintenance and repairs on the equipment, is not determinative of the lease/security agreement issue.

Next, Hamilton directs the Court's attention to ¶ 26 of the Lease,[5] which states: "[t]his lease contains the entire agreement between the parties with respect to the equipment and may not be altered, modified, terminated or discharged except in a writing signed by the party against whom such alteration, modification, termination or discharge is sought." Relying on this provision Hamilton argues that the Purchase Option form relied on by Wedgewood as establishing an option to purchase the equipment at lease end for $1.00 is ineffective against it because it did not sign the document. Contending, therefore, that Wedgewood lacks an option to purchase the equipment at the end of the lease term, but rather must return it at such time, Hamilton argues that the Lease does not fit the statutory definition of security interest provided by 13 Pa.C.S.A. § 1201(6). Finally, citing *In re Murray,* 191 B.R. 309 (Bankr.E.D.Pa.), *aff'd,* 201 B.R. 381 (E.D.Pa.1996), Hamilton contends that the Lease must convey some ownership interest in the equipment in order for it to be determined to be a security interest. *Id.,* at 316. Relying once again on ¶ 10 of the Lease, Hamilton argues that the Lease expressly states that it conveys no ownership interest in the property, only the use and possession thereof. Hamilton argues, therefore, that the Lease is what it

---

5. Hamilton cites ¶ 28 in its brief, but actually quotes the text of § 26.

purports to be, a true lease, and not, as the Debtor's contend, a security agreement.

## DISCUSSION

 It is well established that the question of whether an agreement that appears on its face to be a lease is in reality a security agreement is to be determined by reference to state law. *See In re Continental Airlines, Inc.,* 932 F.2d 282, 294 (3rd Cir.1991); *In re Homeplace Stores, Inc.,* 228 B.R. 88, 92 (Bankr.D.Del.1998); *In re Murray,* 191 B.R. at 313. The parties correctly cite 13 Pa.C.S.A. § 1201 as providing the applicable standard for making this determination in Pennsylvania. In pertinent part, this statute defines the term "security interest" as follows:

(1) **General definition.**—A security interest means an interest in personal property or fixtures which secures payment or performance of an obligation.

\* \* \* \* \* \*

(6) **Determination of lease or security interest.**—Whether a transaction creates a lease or security interest is determined by the facts of each case; however:

(i) A transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:

(A) the original term of the lease is equal to or greater than the remaining economic life of the goods

(B) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(C) the lessee has an option to renew the lease for the remaining eco-

nomic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(D) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

(ii) A transaction does not create a security interest merely because it provides that:

(A) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(B) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording or registration fees, or service or maintenance costs with respect to the goods;

(C) the lessee has an option to renew the lease or to become the owner of the goods;

(D) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(E) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

13 Pa.C.S.A. § 1201.[6]

 The Court notes that 13 Pa. C.S.A. § 1201 was amended in 1992 to

---

6. 13 Pa.C.S.A. 1201(6) also states:

(iii) For purposes of determining whether the transaction is a lease or a security interest:

(A) Additional consideration is not nominal if:

(I) when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

incorporate into Pennsylvania law the 1987 revisions to § 1–201(37) of Article 2A of the Uniform Commercial Code ("UCC"). As noted in Judge Twardowski's scholarly opinion in *In re Murray*, 191 B.R. 309, this change was necessitated by the profusion of inconsistent views among the courts regarding the proper criteria to be applied in determining whether an agreement denominated as a lease created a true lease or a security interest. *Id.*, at 313. The root of the problem under the prior statute was its focus on the subjective intent of the parties.[7] The official comment to revised UCC § 1–201(37) explains:

> Reference to the intent of the parties to create a security interest has led to unfortunate results. In discovering intent, courts have relied upon factors that were thought to be more consistent with sales or loans than leases. Most of these criteria however, are as applicable to true leases as to security interests.... Accordingly, amended Section 1–201(37) deletes all reference to the parties' intent.

(II) when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

(B) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into.

(C) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

7. The former version of 13 Pa.C.S.A. § 1201 (repealed) stated:

13 Pa.C.S.A. § 1201 (West 1998 supp.) (note 37 of official comments). The revised statute seeks to correct the shortcomings of its predecessor by focusing the inquiry of the lease/security interest analysis on the economics of the transaction rather than on the intent of the parties. *Id.*, at 314. Noted commentators professors White and Summers add that under revised § 1–201(37), the question of "[w]hether a document is a security agreement as opposed to a lease ... is dependent on certain factors extrinsic to the document and not capable of control by words in the document." 2 James J. White & Robert S. Summers, Uniform Commercial Code 565 (4th ed. 1995 & Supp.1998). Thus, the question of whether a lease or a security interest is created by a particular transaction is no longer within the exclusive control of the parties and subject to possible manipulation through artful document drafting.[8] Rather, the issue is to be determined by reference to the uniform criteria set forth in the revised statute.

> Whether a lease is intended as security is to be determined by the facts of each case; however:
> (1) the inclusion of an option to purchase does not of itself make the lease one intended for security; and
> (2) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

8. For example, if the parties to a transaction intend to create a security interest but clothe the writing memorializing their agreement in lease like terms, *e.g.*, use of words such as *lease, lessor and lessee*, a court called upon to determine the nature of the agreement under UCC § 1–201(37) would not be bound by the labels affixed to such agreement by the parties. Rather, the court would be required to look beyond the terms used in the agreement to the economic realities of the transaction, the inquiry being one of substance rather than form.

In applying 13 Pa.C.S.A. § 1201(6) the Court observes that the first sentence of numbered paragraph six establishes a general rule that the lease/security interest question is to be determined based upon the facts of each case. The clause that begins immediately after the word "however" at the end of that sentence delineates an exception to the general rule for leases that are not terminable by the lessee prior to the end of the designated lease term, and which satisfy one of the four factors enumerated in that section. For leases which satisfy the foregoing bright line test, the case-by-case analysis exception applies and the inquiry comes to an end—such leases constitute security agreements as a matter of law. *See In re Eagle Enterprises, Inc.,* 223 B.R. 290, 299 (Bankr.E.D.Pa. 1998); *In re Murray,* 191 B.R. at 315; accord, *In re Taylor,* 209 B.R. 482, 484–85 (Bankr.S.D.Ill.1997).

The Debtors contend that the Lease in this case fits the per se category of security agreements because the Lease is, by its own terms, "non-cancellable" by the Lessee prior to the end of the lease term, and because Lessee Wedgewood has the option of becoming the owner of the equipment at the end of such term by paying Hamilton the sum of $1.00. The option price was established in the Purchase Option form that was executed contemporaneously with the Lease and returned to Hamilton according to the instructions provided in the cover letter. The Debtors contend that the purchase option price of $1.00 constitutes nominal consideration.

■ Citing well established principals of contract law, Hamilton asserts that where the terms of an agreement are clear and unambiguous, such agreement must be interpreted and enforced as written. *See Fallon Electric Co., Inc. v. Cincinnati Ins. Co.,* 121 F.3d at 127; *Seasor v. Liberty Mutual Ins. Co.,* 941 F.Supp. at 491; *Williams v. Metzler,* 132 F.3d at 947. Directing the Court's attention to specific terms within the Lease which: purport to define the agreement as a lease, ¶ 10; re-

quire the return of the equipment at the end of the term, ¶ 23; and accord to Hamilton the exclusive right to renew/continue the Lease in the event the equipment is not returned at such time, ¶ 24, Hamilton argues that the Lease is what purports to be, a true lease, and not a security agreement as the Debtors contend. While the cases cited by Hamilton generally stand for important principles of contract law, such cases are nonetheless inapposite for purposes of the present inquiry which is to determine the nature of the Lease as either a true lease or security agreement. As noted above, *supra,* the analysis under 13 Pa.C.S.A. § 1201(6) requires the Court to consider the entire "transaction" in search of the answer to this question. In so doing the Court is not constrained to look solely to the documents signed by the parties which bear the designation "lease" or which make use of terms commonly found in leases. Rather, the analysis may include an examination of both parol and extrinsic evidence if shown to be relevant to the determination of the issue. *Accord In re Homeplace Stores, Inc.,* 228 B.R. at 95; *In re Harbour Lights Marina, Inc.,* 146 B.R. 963, 968 (Bankr.S.D.Ohio 1992), *aff'd,* 153 B.R. 781 (S.D.Ohio 1993). Thus, while the terms of the Lease cited by Hamilton arguably support its contention that Lease is what it purports to be, such terms are nonetheless not determinative of the issue.

The Court turns its attention therefore to the Purchase Option form which was placed in issue here by the Debtors' contention that it established an option for Wedgewood to acquire the equipment at the end of the lease term for nominal consideration. Hamilton argues that the Purchase Option form is ineffective and cannot be used against it because it purports to modify the terms of the Lease, *e.g.,* the requirement that the equipment be returned at lease end, but was not signed Hamilton as required pursuant to the integration language contained in ¶ 26. Absent a purchase option, Hamilton con-

tinues, the Lease does not fit within the case-by-case analysis exception provided by 13 Pa.C.S.A. § 1201(6) and must be considered a true lease under the full analysis specified in the statute. The Court notes that Hamilton does not dispute the authenticity of the Purchase Option form or contend that it was not signed and returned with the Lease as per the instructions Hamilton provided in its cover letter to Debtor JiSun Kim of October 27, 1997, Exhibit D–1, nor does it challenge the Debtors' contention that $1.00 is nominal consideration for the equipment. Thus, Hamilton's objection to the Purchase Option form is based entirely on the integration language contained in ¶ 26 of the Lease.

Turning to the documents at issue, the Court observes that Hamilton's cover letter to Debtor JiSun Kim states, in pertinent part, as follows:

October 27, 1997
Ji S Kim
Wedgewood Cleaners
4311 W Lincoln Hgy
Downingtown, PA 19335

Dear Mr. Kim:

It is my understanding that you will be acquiring equipment from [blank in original]. I have enclosed the necessary papers to complete your equipment lease with [Hamilton]. The term of your lease is 60 months. Equipment Cost/Lease amount $90,000 + tax.

Please keep this cover sheet for your records and return all the following papers in the self-addressed envelope to my office.

(X) Please SIGN each page of the lease SEPARATELY.

(X) Please sign the "PURCHASE OPTION" form (Which states at the end of the lease you will *own* the equipment).

(X) Please sign the "UCC–1 Forms". These are registered with the State and County where the equipment is being leased.

(X) Enclose a check payable to [Hamilton] in the amount of $4,557.00. This represents your First and Last Lease payment; and a $45.00 "UCC–1" filing fee. . . .

Exhibit D–1 (emphasis in original).

The Purchase Option form, addressed to Wedgewood Cleaners and bearing the same date as the cover letter, states as follows:

October 27, 1997
Date

WEDGEWOOD CLEANERS
4311 W Lincoln Hgy.
Downingtown, PA 19335

Subject to having successfully performed all of the terms and conditions of the Lease dated [blank in original] and provided Lessee is not in default thereunder, the Lessee shall have the option to purchase the leased equipment, in whole and not in part, at the end of the term of the Lease or any renewal thereof.

This option may be exercised by making payment upon termination of the Lease at a purchase option price equal to $1.00 in cash, check or bank check.

Upon Payment of the purchase option price, Lessor shall transfer to the Lessee all its right, title and interest in and to the Leased equipment.

Hamilton National Leasing Corp.

By _____

AGREED: WEDGEWOOD CLEANERS

By _/s/ Ji Sun Kim_

Exhibit D–2 (emphasis in original).

■ First, upon review of the terms of both the Lease and the Purchase Option form, it is clear that the latter is not inconsistent with, nor does it seek to alter or amend the former. Rather, the Purchase Option form purports to establish a side or ancillary agreement to formally transfer ownership of the equipment from Hamilton to Wedgewood for $1.00 only after the Lease has been "successfully per-

formed" and provided that Wedgewood "is not in default thereunder." Thus, by its own terms, the Purchase Option form does not become effective until all the terms of the Lease have been performed and the only remaining duty of the Lessee under the Lease would be to remove the equipment from its place of business and return it to Hamilton. The Court notes that both the Lease and Purchase Option form were executed at or about the same time by the Lessee and returned to Hamilton pursuant to the instructions contained in the cover letter. The Court also observes that the Purchase Option is dependent on the Lease for its essential terms. Based on the foregoing the Court has little difficulty concluding that the two documents were intended to be construed together as part of a single transaction, notwithstanding the presence of the integration language contained in ¶ 26 of the Lease. *See Neville v. Scott,* 182 Pa.Super. 448, 127 A.2d 755, 757 (1956) (where two agreements are made as part of one transaction they will be read together to express the essential elements of the parties' undertaking, notwithstanding the presence of an integration clause in the second agreement); *see also Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96, 107–08 (3d Cir.1986) (parol evidence rule did not prevent consideration of a non-competition agreement in conjunction with a sales agreement, where both were inexorably associated with same transaction and no single writing embodied the whole agreement). Thus, the Purchase Option form is neither precluded nor barred by operation of ¶ 26.

 Moreover, upon further review of the Purchase Option form, the Court concludes that a valid contract was formed which granted Wedgewood the option to purchase the equipment at lease end for $1.00 provided certain conditions were met. An option contract, defined at its most basic level, is simply a contract to keep an offer open. *In re III Enterprises, Inc. V,* 163 B.R. 453, 460–61 (Bankr. E.D.Pa.) (citing RESTATEMENT (SEC-

OND) OF CONTRACTS, § 25, at 73 (1979)), *aff'd sub nom., Pueblo Chemical, Inc. v. III Enterprises Inc. V,* 169 B.R. 551 (E.D.Pa.1994). An option, like any other contract, must satisfy the ordinary requirements of contract formation. *Id.* It is black letter law that in order to form an enforceable contract there must be an "offer, acceptance, consideration or mutual meeting of the minds." *Jenkins v. County of Schuylkill,* 441 Pa.Super. 642, 658 A.2d 380, 383 (1995) (citing *Schreiber v. Olan Mills,* 426 Pa.Super. 537, 627 A.2d 806, 808 (1993)), *appeal denied,* 666 A.2d 1056 (Pa. 1995). These elements were met here. First, the cover letter and the Purchase Option form, taken together, constituted a valid offer by Hamilton to convey the equipment to Wedgewood at lease end for the obviously nominal sum of $1.00 provided that all the conditions of the Lease were met and Wedgewood were not in default. Next, by signing the Purchase Option form and returning it to Hamilton as per the instructions contained in the cover letter Wedgewood accepted Hamilton's offer to grant the option. Hamilton's argument that the purchase option is ineffective and cannot be enforced against it because it did not sign the form is unavailing since once the offer was accepted by Wedgewood, Hamilton could no longer rescind it. Hamilton's signature on the form itself therefore, was irrelevant at that point in time. Finally, having determined that the Lease and Purchase Option form were executed as part of a single transaction, see discussion supra, the consideration exchanged in support of the Lease was sufficient to support the option agreement as well. *In re III Enterprises, Inc. V,* 163 B.R. at 463; *DiAmbrosio v. Redevelopment Authority of City of Philadelphia,* 2 Pa.Cmwlth. 351, 277 A.2d 862, 866 (1971); 8 P.L.E. Contracts § 56 (West 1971).

 The elements of contract formation having been met, the Court concludes that Wedgewood was granted an option to buy the equipment at the end of the lease for

the nominal sum of $1.00. Having reached this conclusion, the Court finds that the Lease fits within the case-by-case analysis exception of 13 Pa.C.S.A. § 1201(6), and must, therefore, be considered a security agreement as a matter of law. Having so determined, Hamilton is directed to notify the Court as to whether it intends to file an amended Motion or proceed with the current Motion. If the latter, Hamilton is directed to schedule the continuation of the hearing at the earliest available date. An order consistent with the findings of fact and conclusions of law made herein shall be entered concurrently herewith.